INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v.
BOB AND SALLIE WEAR.

Decided November 12, 1903.

**1.—Railroad—Speed at Public Crossing—Negligence.**

Railroad trains are not required to slacken speed in crossing a public road, and unless the operatives of the train in any particular case are chargeable with knowledge of facts which would make it their duty in the exercise of reasonable care not to run the train over a public crossing at its usual speed it is not negligence for such operators to fail to reduce speed at such points.

**2.—Same—Damages—Fact Case.**

See the opinion for the substance of proof held insufficient to establish negligence of the defendant company as the proximate cause of the fatal accident, and therefore insufficient to support a verdict for damages.

Appeal from the District Court of Smith. Tried below before Hon. R. W. Simpson.

*N. A. Stedman* and *Gould & Morris,* for appellant.

*F. J. McCord* and *N. A. Gentry,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellees against appellant to recover damages for the loss of their son, whose death is alleged to have been caused by the negligence of appellant's employes.

The petition alleges in substance that plaintiff's son, Wesley Wear, while attempting to cross defendant's track at a public road crossing near the city of Tyler, in Smith County, was run over and killed by a passenger train on defendant's railroad; that at the time said Wesley was killed he was only 10 years of age and had a weak and immature mind, and did not have the mental capacity or discretion to understand and appreciate the danger attending the moving of engines; that he had no knowledge of the velocity of a train in motion and did not know the danger of attempting to cross a railroad track in front of an approaching train; that the employes of defendant who were operating said train saw the said Wesley and other children running along the public road toward said crossing, and could tell by the manner in which they were running that they would attempt to cross the track in front of the approaching train, and that the death of said Wesley was caused by the negligence of the employes of defendant operating said train "in negligently running said train and approaching said crossing at a high rate of speed, to wit, 40 miles an hour, and in not having said train under control in approaching said crossing; that the engineer in charge of said train saw the danger and peril of plaintiff's son, yet seeing his peril and danger he negligently failed to stop said train, or to use the appliances at hand to check the speed of said train to avoid killing said child, or lessening his injuries; that had said engineer, when he saw the peril of plaintiff's son,

used the appliances at hand to check the speed of the train any and all the injury and death of plaintiff's son could have been avoided, but seeing his danger and peril, said agents and servants in charge of said train moved over and across said public crossing, onto and over your plaintiff's son and killed him."

The defendant answered by general denial and plea of contributory negligence.

The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiffs for the sum of $250.

The record discloses the following facts: On August 17, 1901, plaintiffs' son Wesley Wear, who was then 10 years old, in company with his brother, Harrison Wear, who was a few years older, attempted to cross defendant's road at a public road crossing near plaintiffs' home in Smith County, just as a north-bound passenger train on said railroad was approaching the crossing, and was struck and killed by the engine of said train.

L. T. Branham, the engineer who was operating said engine, testified that when he first saw the boys they were standing near the track, and when he got near them the larger boy put out his foot as if he was going to try to run across ahead of the train. When he saw the boy make this motion he called to him to stop and made a motion to him with his hand to go back. When he saw that the boy would not stop he applied the emergency brake and did everything he could to stop the train, but was unable to do so in time to prevent it striking the boy Wesley, who attempted to follow his brother across the track. The train was running at its usual rate of speed, which was 30 miles an hour. Before reaching the crossing the whistle of the engine had been blown and proper warning of the approach of the train given. The train could be seen approaching the crossing from the south for a distance of 500 yards.

W. Hartwell, a witness for the defendant, testified that he lived 335 steps from the place of the accident and saw the boys run up to the track and stop, and when the train got within a few yards of the crossing they tried to run across the track in front of the engine and the smaller boy was struck by the engine and killed. This evidence is not contradicted by any testimony in the case except that of Harrison Wear, who testified that he and his brother were running along the public road going to church, and that he did not hear the train whistle and did not see it coming before he and his brother were on the track.

J. C. Cox testified for the defendant that he was justice of the peace and held an inquest over the body of Wesley Wear; that Harrison Wear testified at said inquest that he and his brother Wesley waited until the train got right at them before they tried to cross the track and they then ran a race to see which could get across first.

Appellant by proper assignment raises the question of the sufficiency of the evidence to sustain the verdict.

We think the assignment should be sustained. It may be granted that there is evidence in the case sufficient to sustain the finding of the

jury that plaintiffs' son was not of sufficient mental capacity to be guilty of contributory negligence in attempting to run across the track in front of a rapidly approaching engine, and yet the verdict can not be sustained unless the evidence further shows that the defendant's employes were guilty of negligence which 'was the proximate cause of the boy's death. If the employes of defendant who were operating the train at the time the boy was killed, had, as alleged in the petition, seen him running toward the crossing in such manner or under such circumstances as would have reasonably indicated that he intended to attempt to cross the defendant's track in front of the train, and said employes after seeing the danger, could, by the use of proper care, have prevented the accident, their failure to use such care would be negligence. But no such case is made by the evidence above stated. When the engineer first saw the boys they were standing by the track, and he could not reasonably presume that just before the train reached the crossing they would attempt to cross the track. There being nothing in the surroundings or in the actions of the boys to put him upon notice of their intention to cross the track in front of the train until it was too late to stop the train in time to prevent the accident, he can not be held guilty of negligence in not sooner applying the brakes and attempting to stop the train.

The statute does not require railroad trains to slacken their speed in crossing a public road, and unless the operatives of the train in any particular case are chargeable with knowledge of facts which would make it their duty in the exercise of reasonable care not to run the train over a public crossing at its usual rate of speed, it is not negligence for such operatives to fail to reduce the speed of their trains when approaching a public road crossing.

The testimony of Harrison Wear is contradicted by the overwhelming weight of the evidence and by his own sworn statement at the inquest held over the body of his brother, and we can not believe the jury based their verdict upon it, but must have been influenced by the belief that the speed at which the train was run over the public road was negligence in itself.

We think the judgment of the court below should be reversed and the cause remanded for a new trial and it is so ordered.

*Reversed and remanded.*