MYERS et ux. v. TEXAS & P. RY. CO.

(Court of Civil Appeals of Texas. Feb. 2, 1911. Rehearing Denied March 2, 1911.)

1. MASTER AND SERVANT (§ 279*)—EVIDENCE—SUFFICIENCY.

Evidence *held* not to show that the foreman of a bridge crew was negligent in directing the crew to remove a hand car on the track in front of an approaching train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–980; Dec. Dig. § 279.*]

2. MASTER AND SERVANT (§ 206*) — ASSUMPTION OF RISK—INCIDENTAL DANGERS.

A servant assumes the risks ordinarily incident to the particular service, and assumes that he has capacity to understand the nature and extent of the service and the requisite ability to perform it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 550; Dec. Dig. § 206.*]

3. MASTER AND SERVANT (§ 149*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

The foreman of a bridge crew in directing the crew to remove a hand car from the track in front. of an approaching train had a right to assume that a member of the crew knew and appreciated the ordinarily incident dangers and that in performing his duties he would conduct himself as an ordinarily prudent person would.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 291–295; Dec. Dig. § 149.*]

4. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

In an action for the death of a member of a bridge crew who was struck by a locomotive while attempting to remove a hand car from the track in front of an approaching train, *held* a question for the jury whether those in charge of the train were negligent.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

Appeal from District Court, Harrison County; W. C. Buford, Judge.

Action by W. L. Myers ·and wife against the Texas & Pacific 'Railway' Company. From a judgment in favor of defendant, plaintiffs appeal. Reversed.

S. P. Jones, for appellants. F. H. Prendergast, for appellee.

WILLSON, C. J. The first trial of this case resulted in a verdict and judgment in favor of appellants, plaintiffs below, the father and mother of Charles Myers, who, while in appellee's service as a bridge workman, was killed by one of its trains. The ground upon which the recovery was had was that deceased, with other bridge men, was required by their foreman to assist in removing from the track a hand car on which they were riding, at a time when an approaching train was so near as not to give sufficient time to enable them safely to remove it; and that deceased in attempting to reach a place where he would be safe from an impending collision of the train and the hand car was struck by the former and killed. An appeal from that judgment having been prosecuted to this court by appellee, we reversed same because we were of the opinion that the evidence was not sufficient to support a finding that the foreman was guilty of negligence in the particular charged. 125 S. W. 49. On the trial resulting in the judgment from which this appeal is prosecuted, a recovery was sought on the same ground of negligence, and also on the ground that the persons in charge of the train were guilty of negligence in that, having discovered the hand car on the track and the perilous position of the bridge men, they failed to stop the train or to slacken its speed. The testimony on the last trial in all material respects was the same as it was on the first trial. The facts it established were stated in the opinion of this court on the former appeal. See 125 S. W. 49. They will not be restated here.

On the last trial the court peremptorily instructed the jury to find in favor of appellee, on the theory, it is assumed, that the testimony did not make an issue as to negligence on the part of either the bridge foreman or the persons in charge of the freight train. The action of the trial court in this particular is vigorously attacked as erroneous. So far as an issue as to negligence on the part of the foreman as charged in the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

petition is concerned, we still entertain the opinion expressed on the former appeal. No complaint was made because of the conduct of the foreman in having deceased and the other bridge men to run the hand car into the cut around a curve in the track, without first taking the precaution to ascertain that the train he expected to meet was not so near the curve as to render such an attempt dangerous, or if it was so near, without taking the precaution to have same flagged, and so, or otherwise, prevent a collision between it and the hand car as the latter passed through the cut. The allegation in the petition was that he was negligent in having the bridge men to attempt to remove the hand car from the track after he discovered the train approaching. The foreman having testified that when he discovered the train it was only three or four telegraph poles (shown to be 176 feet apart) away and approaching at the rate of 18 or 20 miles an hour, it is argued that the jury by calculation might have found that less than 18 seconds intervened between the time the train was discovered and the time the collision occurred, and reasonably might have concluded that in having his men to attempt in so short a time to remove the hand car the foreman was guilty of negligence. Looking at the conduct of the foreman in the light alone of that testimony, we would agree that an issue as to negligence on his part was presented. For, clearly, reasonable minds might have differed as to whether, under such circumstances, the danger appeared to be so imminent or not as to make it negligence in the foreman to have had his men to attempt to remove the hand car. But, short as the time, as shown by this testimony, may have been, other testimony established indisputably that it was sufficient to have demanded that the foreman, in the discharge of his duty to protect the approaching train, should have made the attempt; for it appeared that an attempt to remove the car was made, and that it was unsuccessful only because the men lifting one end of same dropped it before they got the car clear of the track. And it further indisputably appeared that even after such failure the foreman and Rogan, one of his men, made another attempt, and, again failing to remove the hand car from the track, still had time to step across the track to a safe place on the north side thereof. There is no reason, in the evidence in the record, to doubt that, had deceased continued to assist the foreman in the effort he was making to remove the hand car until the time when the foreman directed Rogan to "let it go," instead of leaving it and running east along the south side of the track, he still would have had time sufficient to go to the north side of the track where he would have been safe from the effects of the collision which occurred. Reasonably it appeared, therefore, that he lost his life, not because he obeyed an order of the foreman, but because he did not obey same. Keeping in mind the duty which appellants do not question the foreman owed to protect the approaching train by removing the hand car from the track, if it could be removed without too great a risk to himself and his men, it is clear, we think, that he was not guilty of negligence, unless it should be said that he should have anticipated that deceased might become so confused by the situation he was in as to act as he should not act, and so incur avoidable risks. In accepting the service he was engaged in performing it may be said of deceased as was said of the plaintiff in I. & G. N. R. R. Co. v. Hester, 64 Tex. 403, that he "not only assumed the risks ordinarily incident to the particular service, but he also assumed that he had capacity to understand the nature and extent of the service, and the requisite ability to perform it." The foreman, we think, had a right to assume, in the absence of anything ·indicating the truth to be to the contrary, that deceased knew and appreciated the dangers ordinarily incident to the service he had undertaken to perform, and that in performing those duties he would conduct himself as an ordinarily prudent person under the same circumstances would conduct himself. The case cited above was very much like this one. There a section hand was injured as the result of a collision between a train and a hand car which he and other section men were endeavoring to remove from the track as the train approached. "It appears from the evidence," said the court in that case, "that Wilson (the foreman) had been directed by his superior to repair a certain portion of the track on his section, the day appellee received the injuries, and that the accident occurred while the gang were on their way to the designated point. The evidence shows that the morning was foggy and dark, and that the accident happened about 8 o'clock, some three or four miles east of Duval, the place from which they started. That they knew the west-bound passenger train was behind the schedule time, and that they were likely to meet it at any time. They were moving at the rate of about two miles per hour, halting frequently to look and listen for the expected train. At the point at which the collision occurred the track was straight and level, and it appears that the engineer had the headlight of the engine burning. According to the evidence of appellee, the train when discovered by them was from 50 to 150 yards distant, and that they immediately stopped the hand car, and Wilson directed them to take it from the track; that they had turned it across the track so as to remove it, when he noticed that the engine was so near, that he attempted to get out of the way of danger, but the engine struck the hand car, throwing it upon that side of the track where he was, striking him with the 'jigger stick' of the hand car, by which his

thigh was broken, and his head and eye were severely injured. It was the admitted duty of the 'section gang' to remove the hand car from the track, if that could be done without unnecessarily exposing themselves to danger. The gist of the complaint seems to be that Wilson's negligence consists in his failure to order the men to get out of the way and, protect themselves, as soon the occasion required him to do so. Upon this point appellee testified that Wilson ordered them to take the car from the track, and that if he afterwards directed them to let the car go, and to get out of the way, then he did not hear the order. He was on, the east while the others were on the west side of the track, and that he was confused by the situation. He further states that the other hands told him afterward that Wilson did give the order for the men to get out of the way, and they obeyed the order and escaped injury." After referring to other testimony to the effect that Hester "was short-sighted and partly deaf, and seemed stupid, having to be told two or three times often about his work," and quoting a witness as testifying that "we were all trying to get the hand car off the track, and when we were ordered to get out of the way, we all, except plaintiff, got off on the west side of the track out of the way. We were equally exposed with plaintiff, but had time to get out of the way after we were ordered to"—the court said: "There is no .culpable negligence upon the part of Wilson shown by the evidence. On the contrary, he seems to have discharged his duty faithfully and with due care, considering the situation; while appellee, it appears, had accepted employment in a dangerous service, and one in which he had but little experience, and for which he was unfit." So far as the conduct of the foreman here, with reference to the attempt made to remove the hand car, is concerned, we see no reason why it should be held to be any less free from negligence than was the conduct of the foreman in the Hester Case.

We think the testimony in the record raised an issue as to negligence on the part of the persons in charge of the train which should have been submitted to the jury, and that the trial court, therefore, erred in peremptorily instructing them to find for appellee. Rogan, one of the men with the hand car, testified that when he first saw the train it was about a quarter of a mile away and moving at the rate of about 20 miles an hour. Waller, the foreman of the bridge gang, testified that when he first discovered the train it was 3 or 4 telegraph poles, or about 250 yards, away and was moving at the rate of 18 to 20 miles an hour. , He further testified that when he and Rogan, who was assisting him in a further attempt to remove the hand car from the track, desisted from such attempt the train was only about ,90

feet away and was moving at the rate of from 18 to 20 miles an hour. It thus appeared that, the speed of the train had not been slackened between the time it was discovered by the men in charge of the hand car and the time it reached a point 90 feet therefrom. The jury might have inferred from the fact that Rogan saw the train approaching at a distance, of ·a quarter of a mile that the men in charge of the train, in the discharge of their duty to keep .a lookout for it, saw the hand car and the situation of the bridge men with reference to it in time by the use of proper care to have avoided the accident which occurred; and they might have inferred, from the testimony showing that the speed of the train had not been slackened, that the men in charge thereof, after discovering the hand car and the perilous position of those in charge of it, had not used due care to avoid the accident. Ry. Co. v. McVey, 81 S. W. 991.

The judgment is reversed and the cause will be remanded for a new trial.