HIGGINBOTHAM et al. v. GULF, C. & S. F. RY. CO.

(Court of Civil Appeals of Texas. Galveston. April 3, 1913. Rehearing Denied April 24, 1913.)

1. RAILROADS (§ 390*)—INJURIES TO PERSONS ON TRACK—AVOIDABLE INJURY.

If those in charge of a train saw one upon the track and realized that he was in peril in time to stop the train and avoid injury and failed to use every means in their power consistent with the safety of those upon the train to prevent injury, the railroad is liable, notwithstanding the injured person was himself negligent in going on the track in front of the approaching train; and, if his actions were such that it appeared probable that he would not get off the track in time to avoid injury, those in charge will be held to have realized his peril, as under such circumstances they could not speculate on whether he would or would not get off and take the risk of injuring him when it was in their power to prevent injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. § 390.*]

2. RAILROADS (§ 400*)—INJURIES TO PERSON ON TRACK—ACTION—QUESTION FOR JURY—DISCOVERED PERIL.

On evidence in an action against a railroad for the alleged wrongful death of one struck and killed by a train while he was standing on the track endeavoring to turn his horses back, *held*, that the question whether those in charge of the train saw deceased and realized his danger in time to have avoided injuring him and negligently failed to use the means at their command to prevent it was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

3. RAILROADS (§ 398*)—INJURIES TO PERSON ON TRACK—INSUFFICIENCY OF EVIDENCE—DISCOVERED PERIL.

The fact that those in charge of a train saw one upon the track and realized his danger may be proved by the circumstances in which the injury occurred, and is not required to be shown by direct evidence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. § 398.*]

4. RAILROADS (§ 381*) — INJURIES TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

One who goes upon a track while trying to turn his horses back and remains thereon in front of an approaching train is negligent as a matter of law, and cannot recover unless his peril was discovered in time to avoid injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. § 381.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by Josie Higginbotham and others against the Gulf, Colorado & Santa Fé Railway Company. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

John Lovejoy and Presley K. Ewing, both of Houston, H. E. Marshall, of Liberty, and Walker & Baker, of Cleburne, for appellants. Terry, Cavin & Mills, of Galveston, Stevens & Stevens, of Liberty, and F. J. & C. T. Duff, of Beaumont, for appellee.

PLEASANTS, C. J. This suit was brought by appellants, the widow, children, and mother of A. J. Higginbotham, deceased, against the appellee to recover damages for the pecuniary loss sustained by them by the death of said A. J. Higginbotham, which it is alleged was caused by the negligence of appellee's agents and employés in the operation of one of its trains. The petition alleges, in substance, that the said A. J. Higginbotham received the injuries which resulted in his death in the following circumstances: He was a contractor engaged in constructing a bridge on a public road of Liberty county near the crossing of said road by appellee's railroad. When he reached his place of work, he unloosed his horses from his wagon in order that they might graze while he was at work, and while so grazing they went upon the defendant's railroad track. For the purpose of getting them off the track the said Higginbotham went thereon, and while he was absorbed in his efforts to get his horses off the track, and in plain view of the operatives of an approaching passenger train on defendant's railroad, said train, which was running at an excessive rate of speed, ran against the said Higginbotham and inflicted injuries upon him which caused his death. The allegations of negligence contained in the petition are as follows: "That aforesaid injuries to and death of him, said A. J. Higginbotham, were proximately caused by the negligence of the defendant, acting by its agents and servants in the charge and control of said train, in failing to use ordinary or reasonable care and caution to keep a reasonable lookout for and to discover who might be on the track as was deceased, and in negligently running said train on, near, or across said public road at a rate of speed that was excessive and dangerous, and in negligently failing to give the warning required in such case or any reasonable or

adequate warning of the approach of said train by whistle or bell, or in any other manner, and in negligently failing, after actually discovering said A. J. Higginbotham's situation of peril, to use all reasonable means at command, consistent with the safety of the train and those aboard, to avoid injury to him therefrom; which acts and omissions of negligence, severally and collectively, were a proximate cause, as aforesaid, of said A. J. Higginbotham's said injuries and death." The defendant answered by general demurrer, general denial, a plea of contributory negligence, and a plea of settlement with two of the children for, whose benefit the action was brought, to wit, D. W. Higginbotham and Anna Higginbotham, joined by her husband, John J. Harrison. After the plaintiffs' evidence was in, the defendant moved the court to instruct a verdict for the defendant on the ground that the plaintiffs had failed to make out their case. This motion was granted; and, under a peremptory instruction of the court for the defendant, a verdict was returned in its favor, upon which judgment was rendered that plaintiffs take nothing and defendant go hence with its costs.

The evidence shows that, as alleged in plaintiffs' petition, the deceased, A. J. Higginbotham, was killed by a passenger train on appellee's road while he was engaged in getting his horses off appellee's track. J. R. Geldard, a witness for plaintiffs, testified that he was in the public road about 25 yards north of deceased at the time he was killed; that a couple of horses that deceased had worked down there to his wagon were loose; that defendant's east-bound passenger train was coming, and deceased's horses started across the track, and he ran in to get ahead of them so as to keep them from getting on the track; that, according to witness' best recollection, deceased first got on the track from the public road; his horses and he both approached the railroad from the south side, and at the time he was hit, the horses were on the west side of the public crossing, right up against the railroad, about 60 or 70 feet west of the public road; that witness heard the train blow for the crossing, that is, blow what they told him was the crossing whistle; could not say whether the train had gotten around the curve when deceased went on the track; when witness noticed the train it was about a quarter of a mile down the track; that, when deceased got down to where the horses were, he commenced fighting at them with his hands, trying to turn them back, and was there so engaged, as witness estimated it, about three minutes, about two minutes after witness saw the train; that the distance to the curve from where deceased was fighting the horses, as estimated by the witness, was half to three-quarters of a mile; that the track from the curve to where deceased was standing at the time when struck was a straight track, nothing to obstruct the view between him and the curve; that, when the train struck deceased, witness estimated that he was knocked from 50 to 60 feet, and he hit the ground about five feet from the public road, about 10 feet from the railroad track; that, after the train struck deceased, it ran from 100 to 150 yards before it stopped; that the train was within 15 to 20 feet of deceased, something like that, when the steam was cut off; and that the train did not slow up any after it cut off the steam before it struck him; that witness did not hear the ringing of the bell, was in a position to have heard the bell if it had been ringing, and his hearing was good; that he could not estimate the distance from where the train sounded the whistle, because he never paid much attention to where the train was when it whistled, but his best judgment is that the train blew after it came around the curve; his estimation would be somewhere about a quarter of a mile from the crossing; knew where the whistling post was, but did not know how far from the crossing, but it was east of the curve and west of the crossing.

Nora Richardson, a witness for plaintiffs, testified that she was an eyewitness of the accident, being on a gallery about 100 yards distant; that deceased was building a bridge on the public road near the crossing; his horses were loose and had ropes on them, and went upon the railroad track; that deceased went there to turn them back, had difficulty with them, as they did not want to turn back; "they stayed up there until the train knocked him off"; that deceased went upon the track just about the time the train came in sight around the curve; the train was coming about as fast as it could, was running extra fast, and deceased never left the track from the time the train came around the curve until he was struck; that she heard the whistle blow about the time the train turned the curve, but she did not hear any bell ringing; that eyesight and hearing of deceased were good; that the train had about five cars besides the engine and tender; that it was on a straight stretch of track after it got around the curve before it reached the crossing; that the train went about two lengths of the train after it struck deceased before it stopped.

Carl Emanuel, a witness for plaintiffs, testified that he saw the accident which caused the death of deceased; saw the train when it was about 10 feet from him; witness was standing about 50 yeards from the track; the deceased had been on the track a minute or two minutes, as witness supposed, before he was struck; was trying to get his horses off the track; was just motioning at the horses at the time the train struck him; was fighting at his horses with his hands; witness had seen deceased on

the track about a minute and a half or two minutes before that; the track was straight to the curve; a distance of half a mile or three-quarters, something like that; that deceased got on the railroad track near the cattle guard west of the crossing; that the train was going tolerably fast, and that deceased was from 60 to 70 feet west of the public road when the train hit him; that witness went over after deceased was killed, and saw him lying there, about 6 or 8 feet from the track, and about 40 feet, as witness guessed, from where he was struck; that he heard the train approaching before deceased got on the railroad track, and heard the whistle at the whistling post; that it was a minute or two after the train whistled before it struck deceased; that it blew at the whistling post, just after the train gets around the curve, but witness did not know how far, must have been a quarter of a mile away; that the last time he saw deceased before the train struck him, he was standing sideways to the engine, never saw him turn his head or look down towards the engine; that deceased could, while on the track, have looked down the track and seen the train coming; the train made a noise in approaching there, and witness could hear it, but he was closer to the train than deceased was, about 200 yards further up the track; that when the train whistled for Milvid, three-quarters of a mile from the place of the accident, a negro named Davis told deceased he had better look after his horses as the train was coming; that the right of way was clear ahead from the curve to where plaintiff was struck, was open, just as much open looking east as it was looking west; that the place where the train whistled before it struck deceased was not where it whistled for Rye; the place it whistles for Rye is just about the crossing; the place where it whistles for this crossing is down about a quarter of a mile.

None of the operatives of the train testified, and the testimony before set out is all of the testimony introduced showing the circumstances in which the deceased was killed.

[1, 2] Under their first assignment of error appellants complain of the charge of the court instructing the jury to return a verdict for the defendant on the ground that the evidence raised the issue of discovered peril, and that issue should have been submitted to the jury.

We think this assignment should be sustained. It is unnecessary to cite authority in support of the proposition that if the operatives of the train saw the deceased upon the track and realized that he was in peril in time to have stopped the train and avoided injuring him and failed to use every means in their power, consistent with the safety of those upon the train, to prevent the injury, appellee would be liable for such injury notwithstanding the deceased was himself negligent in going and remaining upon the track

in front of the approaching train. The undisputed evidence shows that for a distance of one-half to three-fourths of a mile the view from the place at which the deceased was struck down the track in the direction of the approaching train was unobstructed, and assuming that the engineer and fireman were in the position where their duties required them to be, and were looking ahead as their duty required, they necessarily saw deceased upon the track and saw that he was engaged in the effort to get the horses from off the track. The evidence further shows that no warning signal of any kind was given the deceased and no effort was made to slacken the speed of the train until it was within 15 or 20 feet of him. That the train could have been stopped within 100 to 150 yards was shown by the fact that it did stop within that distance after it struck the deceased. But one other fact is necessary to bring the case within the rule of discovered peril, and that is that the operatives of the train realized the peril of the deceased in time to have prevented the injury. It was not necessary, in order to charge them with the duty of using the means at their command to prevent injury to the deceased, that they should have believed or thought it certain that deceased would not get out of the way of the train. If his actions and his apparent absorption in his efforts to get the horses out of the way of the train were such that it appeared probable or likely that he would not get off the track in time to avoid being struck by the train, the operatives of the train should be held to have realized his peril. If the circumstances reasonably indicated to said operatives the probability of his not getting off the track, they were not authorized to speculate on whether he would or would not get off, and take the risk of killing him when it was in their power to prevent injuring him.

If the doctrine of discovered peril only applied when the operatives of a train were certain that the person injured was in peril of life and took no steps to save him when his injury could have been prevented, the necessary proof in every case in which discovered peril is the ground of recovery would show a case of murder or criminal negligence. Such proof is not necessary. Railway v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442. In the case cited this court, speaking through former Chief Justice Gill, says: "There are loose expressions in cases from courts of the highest authority which tend to support the contention that, in order to justify a recovery in such a case, the engineer must actually know that deceased will not leave the track. This is notably true in Railway v. Shetter, 94 Tex. 199, 59 S. W. 533, in which occurs the expression: '* * * A person walking negligently along a railway track in front of a moving train will surely be hurt unless the train stops or he gets out of the way. In a sense he may

be said to be in danger, but those controlling the train are not required to assume that by his negligent failure to act he will remain in danger. It is only when they realize that he cannot or will not get out of the way that the duty of averting the collision arises. * * *' One might infer from this that one who, in fact, saves himself at the last moment, was never in fact in peril, and that until the engineer knows that one cannot or will not leave the track in front of his engine he has not realized that person's peril; but neither in the decision in which that language was used nor in the latter case (Railway Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409), in which Justice Brown quotes it, is it used in the sense in which appellant construes it. This is made clear by the language of Judge Brown immediately preceding the quotation in O'Donnell's Case, supra, as follows: 'If O'Donnell was negligent, then, to render the company liable, the evidence must show that O'Donnell was in a place of danger when seen by the employés of the company, that the men in charge of the engine saw him and realized that he was in a dangerous position, and also that he either could not or would not probably extricate himself from the dangerous situation. * * *' The authorities, when rightly construed, are one on the proposition that, in order to give rise to this new duty resting upon the discovery of peril, it is not requisite that the engineer must know that disaster is inevitable unless he himself can avert it. It is enough if he knows that the person injured was in a place of danger from which he probably could not or would not extricate himself in time. Railway v. Hanna, 34 Tex. Civ. App. 608, 79 S. W. 639, and authorities cited." The following cases support this rule: Railway Co. v. Wear, 33 Tex. Civ. App. 492, 77 S. W. 272; Gehring v. Galveston Electric Co., 134 S. W. 291; Railway Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1111; Galveston Electric Co. v. Antonini, 152 S. W. 841.

[3] It goes without saying that the fact that the operatives of the train saw the deceased and realized his danger can be proved by the circumstances in which the injury occurred and is not required to be shown by direct evidence. We think the evidence before set out was sufficient to have sustained a finding that the operatives of the train saw the deceased and realized his peril in time to have avoided injuring him and negligently failed to use the means at their command to prevent the injury. Railway Co. v. Brooks, 132 S. W. 95; Myers v. Railway Co., 134 S. W. 814; Freeman v. Jamison, 138 S. W. 1100.

[4] We think that the deceased in remaining upon the track in front of the approaching train was negligent as a matter of law, and plaintiffs cannot recover unless the jury should find from the evidence that the op-

eratives of the train saw the deceased and realized his peril in time to have avoided striking him by the use of proper care and failed to use such care.

From these views of the law it follows that the judgment of the court below should be reversed and the cause remanded, and it has been so ordered.

Reversed and remanded.