GULF, C. & S. F. RY. CO. v. HIGGINBOTH-AM et al. (No. 6706.)

(Court of Civil Appeals of Texas. Galveston. Dec. 11, 1914. Rehearing Denied Jan. 7, 1915.)

1. APPEAL AND ERROR ☞213—OBJECTIONS IN LOWER COURT—PEREMPTORY INSTRUCTION.

There being no difference in an objection to the refusal of a peremptory instruction and an assignment that the verdict is not supported by evidence, an objection to a peremptory instruction need not be taken in the lower court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1165, 1304–1308; Dec. Dig. ☞213.]

2. RAILROADS ☞348—CROSSING ACCIDENT—DISCOVERED PERIL — SUFFICIENCY OF EVIDENCE.

In an action for death of a person on a crossing while attempting to remove horses from the track, evidence *held* to sustain a finding that defendant was negligent in not avoiding the injury after discovering the peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ☞348.]

3. EVIDENCE ☞588—WEIGHT OF TESTIMONY—REJECTION OF PART BY JURY.

A jury has the right to reject part of a witness' testimony and believe the rest.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Dec. Dig. ☞588.]

4. RAILROADS ☞338—CROSSING ACCIDENT—DISCOVERED PERIL.

An engineer, after discovering the peril of a person removing horses from a crossing, is negligent if he realizes that the person would not probably extricate himself from the perilous position, though he could not know with certainty that the person would leave the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099; Dec. Dig. ☞338.]

5. APPEAL AND ERROR ☞548—BILL OF EXCEPTIONS—INSTRUCTIONS.

Errors in the court's charge are not reversible, where objection was not preserved by a bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2433–2440; Dec. Dig. ☞548.]

6. DEATH ☞99 — DAMAGES — EXCESSIVE AWARD.

In an action for death of a person 42 years old, and earning $100 a month, $15,000, distributed $8,000 to the widow, $5,000 to a minor child, and $2,000 to his mother, *held* not so excessive as to show passion or prejudice.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. ☞99.]

7. DEATH ☞86—DAMAGES—PECUNIARY LOSS TO WIFE.

In estimating the pecuniary loss to wife and child by the death of the husband and father, the value to the wife of the support, attention, and care given her by the husband and the education and care given by the father to his minor child, are all elements of pecuniary damage in addition to earning capacity.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 108, 109,· 112–114, 117, 119; Dec. Dig. ☞86.]

8. APPEAL AND ERROR ☞731—ASSIGNMENTS OF ERROR—GENERALITY.

An assignment of error, that·the jury was guilty of misconduct and violated the instructions of the court in considering the verdict, is too general, as it does not direct the intention of the court to the specific error complained of as required by Rev. St. art. 1612.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3017–3021; Dec. Dig. ☞731.]

9. NEW TRIAL ☞143—MISCONDUCT OF JURORS—SUFFICIENCY OF EVIDENCE.

Testimony of jurors *held* insufficient to show that they arrived at a verdict for plaintiff before considering and answering questions submitted in the charge.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 290–296; Dec. Dig. ☞143.]

10. JUDGMENT ☞371—VACATION—DEATH OF BENEFICIARY.

That the mother of deceased, awarded damages in a suit for wrongful death, died before judgment, did not entitle defendant to a new trial as to the other parties suing; but the judgment on proper showing of death should be vacated and her suit dismissed, since her cause of action did not survive.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 707; Dec. Dig. ☞371.]

11. JUDGMENT ☞384—SETTING ASIDE—AFFIDAVITS—INFORMATION AND BELIEF.

In an action by the widow, child, and mother of a deceased for wrongful death, the court is not in error in refusing a supplemental petition for new trial based on information and belief that the mother, awarded damages by the verdict, died before judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 727–732; Dec. Dig. ☞384.]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by Mrs. Josie Higginbotham and others against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, F. J. & C. T. Duff, of Beaumont, and Stevens & Stevens, of Liberty, for appellant. John Lovejoy, Presley K. Ewing, and L. E. Blankenbecker, all of Houston, and Marshall & Harrison, of Liberty, for appellees.

PLEASANTS, C. J. This suit was brought by the widow, children, and mother of A. J. Higginbotham against the appellant to recover damages resulting from the death of said A. J. Higginbotham, which it is alleged was caused by the negligence of appellant's servants operating one of its trains. The petition alleges: ·

"That on July 8, 1910, A. J. Higginbotham was engaged in contract work for Liberty coun-

ty, and that at the particular time in question he was engaged in work on the Liberty and Livingston road at a point where said road is crossed by the defendant railway company. That on the date above set forth two horses owned by A. J. Higginbotham were grazing lose, trailing ropes, and wandered upon the track of the defendant company near the public crossing. That the deceased, A. J. Higginbotham, went upon the track for the purpose of getting his horses and removing them therefrom. That, while said Higginbotham was engaged in removing his horses from the track, a train of the defendant company, rapidly approaching from the west, and going in an easterly direction, and running at an excessive rate of speed, to wit, 50 miles per hour, and without giving any warning by bell or whistle, when within a distance of 80 rods from the crossing and without keeping any reasonable lookout to avoid injuring those persons who might be on the track at such time and place, and after discovering the danger of the said Higginbotham, ran against, knocked down, and ran over him, injuring him to such an extent that he died from the effects of said injuries. * * * That the injuries and death of the said A. J. Higginbotham were caused by the negligence of the defendant, acting through its agents and servants, in failing to use ordinary or reasonable care and caution to keep a reasonable lookout for and discover persons who might be upon the track, and in negligently running said train on, near, and across said public road at a rate of speed that was excessive and dangerous, and in negligently failing to give the warning required in such cases, or an adequate warning of the approach of the train by whistle or bell, and in negligently failing, after discovering the said A. J. Higginbotham's situation of peril, to use all reasonable means at command consistent with the safety of the train to avoid injuring him, and that said acts and omissions, severally and collectively, were the proximate cause of the injury and death of the said Higginbotham."

Damages were claimed in the sum of $30,000.

Defendant answered by general demurrer and special exception to the petition on the ground that the facts alleged in the petition show that the deceased was guilty of contributory negligence, as a matter of law, in going upon and remaining on defendant's track until struck by the approaching train. The answer denied generally and specially each and all of the allegations of negligence alleged in the petition, and specially pleaded that the death of said Higginbotham was caused by his own negligence in going and remaining upon defendant's track under the circumstances alleged in the petition.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs for the sum of $15,000, apportioned by the jury as follows: $8,000 to the widow, Josie Higginbotham; $5,000 to the minor child, Lemuel Higginbotham; and $2,000 to the mother, Mrs. Marie Lackey.

This is the second appeal of this case. On the trial from which the first appeal was taken, the trial court instructed the jury to return a verdict for the defendant. This court on that appeal reversed the judgment of the lower court on the ground that the evidence raised the issue of discovered peril and that issue should have been submitted to the jury. Vide Higginbotham v. Railway Co., 155 S. W. 1025. Upon the trial from which appeal is prosecuted, the trial judge, in conformity with the views expressed by this court upon the former appeal, instructed the jury, in substance, that the deceased was guilty of contributory negligence in going and remaining upon defendant's track in the circumstances shown by the evidence, and plaintiffs were not entitled to recover unless the jury believed from the evidence that the operatives of the train which struck and killed the deceased saw and realized his peril in time to have avoided striking him by using all the means in their power consistent with the safety of those upon the train and failed to use such means.

The evidence upon this trial was practically the same as upon the former trial, with the addition of the testimony of the engineer of the train, who did not testify upon the former trial; no testimony having been introduced on that trial by the defendant. Without setting out the testimony in detail, it is sufficient to say that it justifies the following fact conclusions:

The deceased, A. J. Higginbotham, was struck and killed by a train of defendant company while upon the track of defendant for the purpose of driving two horses belonging to him from the track and preventing them from being struck by the approaching train. When he went upon the track to drive the horses therefrom, he knew the train was coming, as he had heard it whistle for a station a mile and a half distant, but at that time it was not in sight. He had some difficulty in getting and keeping the horses from the track, and while he was absorbed in this undertaking, fighting or waving the horses from the track, and not looking in the direction of the train, which was approaching at a rate of speed variously estimated by the witnesses at from 25 to 45 miles an hour, he was struck by the train and received injuries which caused his death. After the train which was approaching from the west passed a curve in the track about three-fourths of a mile west of the place at which the deceased went upon the track, there was nothing to prevent the operatives of the train from seeing the deceased and observing what he was doing on the track and the trouble he was having in driving and keeping the horses therefrom. The track was perfectly straight, and there was no obstruction of the view from the curve to the place at which deceased was struck. No effort was made by the operatives of the train to stop it or to lessen its speed, and no warning signals were given the deceased until the train was almost upon him. The train was properly equipped with air brakes, and could have been stopped in a distance of 450 feet if it was going at the rate of 45 miles an hour, and in 350 feet if the rate was not more than 35 miles an hour. The engineer testified, in substance, that he was in his proper position on his engine with

his hand on the throttle when he came around the curve before striking the deceased, and that if deceased had been on the track at that time he would have seen him; that when he first saw the deceased on the track the train was within 100 feet of him; and that he immediately applied the emergency brakes and blew the whistle, but it was not possible to stop the train in time to avoid striking the deceased. He further testified:

"When I saw him (deceased), I realized he was in a position of danger. * * * I did not know whether Mr. Higginbotham was going to get off the track or not. I thought that, because I thought he was excited when he first came on the track. I thought it when he first came on the track. He went towards the north side of the track as if he was going to finally get off, but he never did make a move as if to get off in a hurry."

The first assignment of error complains of the refusal of the court to instruct the jury to return a verdict for the defendant, on the ground "that the undisputed evidence showed no liability on the part of the defendant."

[1] Appellees object to our considering this assignment:

"Because appellant does not show by a bill of exceptions that the particular charge was requested and refused before the argument to the jury, or before the submission of the case to the jury, nor that the action of the court was excepted to at such time, and, such being the case, the assignment is not presented in the manner required by law and should not be. considered."

It has been held by most, if not all, of our Courts of Civil Appeals, that under our present statute no objection to the charge given or to the refusal to give requested instructions will be considered on appeal unless the objections are preserved by a proper bill of exceptions. This court has followed and approved this holding in the cases of Railway Co. v. Churchill, 171 S. W. 517, O'Neil Engineering Co. v. City of San Augustine, 171 S. W. 520, and Conn v. Houston Oil Co., 171 S. W. 524, all recently decided and not yet officially reported. In the case last cited, however, we declined to apply the rule to an assignment complaining of the action of the court in giving a peremptory instruction for the defendant.

It seems to us that a complaint of the refusal of the trial court to instruct a verdict for defendant on the ground that the undisputed evidence showed no liability on the part of the defendant is but another way of saying that the verdict rendered for the plaintiffs is without any evidence to support it. The fact that the trial court submitted the case to the jury without objection on the part of the defendant would not justify the court in refusing to set aside the verdict on motion for new trial on the ground that upon the undisputed evidence the verdict should have been for the defendant, and an appellate court should not in such case refuse to consider the question of whether there is any evidence to support the verdict. This being true, it is immaterial that the assignment complains of the failure to instruct a verdict for the defendant, rather than that the rendition of the verdict for the plaintiff is without evidence to support it. Both complaints present the same identical question.

We think the assignment should be considered, but upon the facts before found it is without merit.

[2, 3] The evidence is sufficient to sustain the finding that the engineer on the train (no other operative of the train testified on the trial) saw deceased on the track, and saw what he was doing there, when the train was at such a distance from him that it might have been stopped before it reached him. This being so, the question of whether the engineer realized the peril of deceased is eliminated by his own testimony above set out. The jury, in view of the other testimony showing the length of time deceased was on the track before he was struck by the train, and that he was in plain view and could have been seen by the engineer after the train came around the curve, which was a half mile or more from the deceased, were not required to accept the engineer's statement that when deceased came on the track the train was within 100 feet of him (Brown v. Griffin, 71 Tex. 659, 9 S. W. 546); nor were they required in rejecting this portion of the engineer's testimony to disbelieve his further statement that when he "saw deceased he realized he was in a position of danger" (Garcia v. Sanders, 90 Tex. 109, 37 S. W. 314). Under all of the testimony, accepting, as they had a right to do, such portions of the testimony of each of the witnesses as they believed to be true, and discarding that which they believed false, the jury were justified in finding that the engineer saw and realized the peril of the deceased in time to have avoided striking him if he had used all the means at his command consistent with the safety of those upon the train, and failed to use such means.

[4] In order to hold appellant liable for the failure of the engineer to use all the means in his power, consistent with the safety of those upon the train, to prevent striking the deceased after he saw and realized his perilous position, it was not necessary that the engineer should have known with certainty that deceased would not leave the track. All that is required to place upon the operatives of the train the duty to use the means at their command to prevent injury to one seen to be in a perilous position is their realization that the person in such position will not probably extricate himself therefrom. Railway Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442; Galveston Electric Co. v. Antonini, 152 S. W. 841; Gehring v. Electric Co., 134 S. W. 291; Higginbotham v. Railway Co., 155 S. W. 1025.

The second assignment of error complains of the charge of the court submitting the issue of discovered peril, on the ground:

"That the undisputed evidence shows that the engineer in charge of the train, as soon as he discovered the deceased was apparently in danger, applied all of the means in his power to prevent the alleged injury."

What we have said in discussing the first assignment disposes of the question presented by the second, and it is also overruled.

[5] The third and fourth assignments, which complain of errors in the charge of the court, are not entitled to consideration because the objections to the charge were not preserved by a bill of exceptions as required by the statute. If, however, the assignments should be considered, they are without merit.

What is designated in the brief of appellant as its fifth assignment is a combination and joint submission of the eighth, ninth, tenth, and eleventh grounds of the motion for new trial. The eighth ground attacks the verdict because "it is against the preponderance of the evidence introduced upon the trial." The ninth charges that the verdict "is so excessive and unreasonable as to show prejudice on the part of the jury." The tenth and eleventh are as follows:

"Tenth Assignment of Error. (Being the tenth ground of the motion for a new trial.) The evidence having shown that, at the time A. J. Higginbotham was killed, he was 42 years old, that he was earning $100 per month, and that there was dependent upon him six persons, while the judgment herein is for only three persons, or one-half of those dependent upon him, the amount allowed by the jury is excessive and unreasonable.

"Eleventh Assignment of Error. (Being the eleventh ground of the motion for a new trial.) The evidence having shown that the deceased was 42 years old at the time of his death, that there were six people dependent upon him, and that at the time of his death he was earning $100 per month, and there being no evidence as to the probable duration of his life, the verdict is so excessive as to show prejudice on the part of the jury."

[6, 7] There is no merit in any of these contentions. While the verdict is a liberal one, we cannot hold that it is so unreasonably large as to show that in fixing the amount of plaintiffs' damage the jury were actuated by passion, prejudice, or any improper motive. In estimating the pecuniary loss to the wife and children caused by the death of the husband and father, it is not alone the amount that the deceased was earning, or would probably have earned during his life expectancy, that should be considered; but the value to the wife of the support, attention, and care given her by the husband, and the education and care given by the father to his minor children, are all elements of damage. As said by our Supreme Court in the case of Railway Co. v. Lehmberg, 75 Tex. 61, 12 S. W. 838:

"Every parent and husband has for his wife and children a pecuniary value beyond the amount of his earnings by his labor or vocation."

[8] The remaining assignment complains of the verdict because of alleged improper conduct of the jury. The assignment and proposition are as follows:

"Because the jury was guilty of misconduct and violated the instructions of the court in considering the verdict.

"The jury having violated the instructions of the court in the method and manner of considering their verdict, and such misconduct having deprived this appellant of a substantial right, the judgment should be set aside and remanded for a new trial."

We are inclined to agree with appellees that the assignment is too general to entitle it to consideration. Neither the assignment nor the proposition give any indication of what act or omission of the jury constituted the alleged misconduct. We do not think the assignment distinctly specifies the ground relied on to show error, nor does it direct the attention of the court to the specific error complained of, as required by article 1612 of the Revised Statutes. If, however, we are wrong in this conclusion, the assignment cannot be sustained.

From the statement following the assignment it appears that the court instructed the jury to answer three questions: First, to determine whether or not the engineer saw and realized the peril of the deceased in time to have stopped the train and avoided injuring him; second, if this question was answered in the affirmative, to say whether or not the engineer, after seeing and realizing the perilous position of the deceased, failed to use all the means at his command, consistent with the safety of those upon the train, to prevent injury to deceased; third, if both of the foregoing questions were answered, "Yes," the jury were then to determine the amount of damage to which plaintiffs were entitled.

It was shown on motion for new trial by the testimony of the foreman and three other members of the jury that upon the retirement of the jury, before answering either of the questions submitted by the charge, they discussed and decided the general question of whether plaintiffs were entitled to recover anything. Some of the jurors were at first of opinion that plaintiffs ought not to recover anything, but after discussion it was finally agreed by all that plaintiffs ought to recover. After this conclusion was reached, the questions submitted by the court were taken up separately, and the first two answered in the affirmative, and the third answered by fixing the amount of the damages at $15,000, apportioned as before stated.

Each of the four jurors examined, whose testimony was offered by the appellant on direct examination, testified in substance as above set out.

On cross-examination, the foreman testified:

"The concensus of opinion of the jury was that the first question propounded to them

should be answered, 'Yes.' It was agreed between the jury that the second question should be answered, 'Yes.' It is not a fact that the jury decided to give the plaintiff some amount in recovery before they decided how to answer the questions."

Green, one of said jurors, also testified on cross-examination that:

"When the jury retired, the first thing we considered was the first question in the court's charge. We considered that question, and answered it, before we went further with the charge. The first thing we did was to answer question No. 1, then we answered question No. 2, and then we agreed on the amount we would give these plaintiffs in this case. We answered the first question before we went any further, and then the second, and then we agreed upon the amount. After we answered the questions, we decided that we would let the plaintiff recover. We answered the questions first; we had to vote on that. We voted on the questions first, the very first thing. * * * We voted on the amount after we answered the questions. We answered the questions before we voted on any amount."

Another juror on cross-examination stated: "Mr. Baillio had the charge, and we all read the charge thoroughly. We couldn't understand them, and we read them again. We read the first charge over two or three times before we thoroughly understood it. We read the charge carefully, and answered the questions as they came. We answered the first question before we went any further. We followed the instructions of his honor, and answered question No. 1, then question No. 2, then question No. 3, and then we agreed on the amount, and wrote out the verdict, and then agreed upon the amount the plaintiffs should have."

The fourth juror also testified:

"We followed the court's charge. We did not understand it until we had read it two or three times. After we had read it over, we understood it. After we read it and understood it, the jury answered the first question, 'Yes,' and the second question, 'Yes.' To the third question the jury answered that they would give the plaintiffs $15,000. To begin with, I was against the plaintiff, and did not think the plaintiff should be entitled to anything; but after I read the charge carefully, and discussed the matter among ourselves, I answered question No. 1, 'Yes,' and question No. 2, 'Yes,' and that was my verdict in this case. I changed my opinion and finally decided that the plaintiff ought to recover."

The fifth and last juror examined testified:

"We considered the first question propounded to us before we went any further. The jury answered that question, 'Yes,' and the next thing we considered was question No. 2. We answered that, 'Yes.' We then decided the amount the plaintiff was entitled to recover. We hadn't discussed whether we would allow the plaintiff to recover anything until we answered the questions. We agreed on the questions first, on the answers. That was some little time after we retired. Three men held out for the defendant; they wanted to answer it in favor of the defendant; they wanted to answer that the engineer was not to blame, or answer those questions, 'No.' * * * That was before we voted on any liability. The first thing we did was to answer those questions as they came."

We think this testimony wholly fails to show any improper conduct on the part of the jury. When the testimony of each of said jurors is considered as a whole, we think

it is apparent that he only meant, when he said on direct examination that the jury discussed and determined the questions of whether plaintiffs were entitled to recover any amount before the questions submitted by the court were answered, that they voted upon and decided the question of defendant's liability before they separately considered and wrote the answers to the questions. The fair and reasonable inference from the testimony is that, in discussing and deciding the question of defendant's liability, they based their conclusion upon their findings upon the questions submitted. We fail to see any impropriety in their considering the questions in this way. There is nothing in the testimony to indicate that the answers to each of the questions were not the fair and unbiased conclusion of each of the jurors from the evidence uninfluenced by any improper act or argument of any member of the jury. This is all that any litigant can ask of any jury.

This disposes of all the questions presented in appellant's brief.

Upon the argument of the case, it was stated by counsel for the appellant that appellee Mrs. Lackey, who by the verdict and judgment was awarded $2,000 of the damages found by the jury, was dead at the time the verdict and judgment were rendered; but such fact was then unknown to the trial court and to the attorneys who tried the case, and attorneys for appellant had no information of the fact until after the motion for new trial had been overruled. Having been told the day before the court adjourned that said plaintiff was dead at the time the judgment was rendered, appellant's attorneys filed a supplemental motion for a new trial asking that the judgment be set aside and a new trial granted appellant because of the death of said plaintiff.

[9, 10] This motion was not supported by any evidence other than the affidavit of attorneys for the defendant to the effect that they had been informed and believed that the facts therein stated as to the death of Mrs. Lackey before the rendition of the judgment were true. It was impossible for appellant's attorneys in the time left before the adjournment of the court to obtain definite evidence as to the date of Mrs. Lackey's death. The court overruled the motion.

[11] Appellant has not presented any assignment of error challenging this ruling of the court; but, if the question was presented by proper assignment, we could not say that the court erred in refusing the motion. The death of Mrs. Lackey did not entitle appellant to a new trial of the whole case. If the evidence had shown with reasonable certainty that she had died before the rendition of the judgment, the portion of the judgment awarding her damages in the sum of $2,000 should have been set aside and her suit dismissed, since the cause of action given her

by the statute did not survive to her heirs or legal representatives. Texas Loan Agency v. Fleming, 18 Tex. Civ. App. 668, 46 S. W. 63. We cannot say, however, that upon the showing made the trial court was required to pursue this course. If it is a fact that Mrs. Lackey died before the rendition of the judgment, appellant, by proper proceedings, may have the judgment in her favor vacated.

We are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.