MISSOURI, K. & T. RY. CO. OF TEXAS v. BURK.

(Court of Civil Appeals of Texas. Texarkana. Nov. 6, 1913. Rehearing Denied Nov. 20, 1913.)

1. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against a railroad company for injury to plaintiff by frightening his team while waiting to cross the track, an instruc-

tion that if, while plaintiff was a safe distance from the crossing, the flagman gave a danger signal, and plaintiff drove his team up and stopped at a place where travelers usually stopped to let trains pass, and such place was reasonably safe for that purpose, and in stopping at such place plaintiff was using ordinary care for his own safety, etc., then the jury should find for plaintiff, was not objectionable as intimating that a safe place to stop was a place where travelers usually stopped.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

2. RAILROADS (§ 350*) — INJURY TO PERSONS NEAR TRACK—SEPARATE GROUNDS OF NEGLIGENCE—SPEED—SUBMISSION.

In an action for injuries to plaintiff by the frightening of his team while waiting to cross the track, evidence *held* to justify submission of the issue of the speed of defendant's train, alleged to have been in violation of a city ordinance, as an independent act of negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

3. APPEAL AND ERROR (§ 1064*) — HARMLESS ERROR—INSTRUCTIONS.

Plaintiff drove toward a railroad 'crossing guarded by a flagman, the view of which was obstructed by intervening freight cars. As he was about to cross a passenger train rushed by on an adjoining track frightening plaintiff's horses and overturning his vehicle. The court charged that if the jury believed that, when plaintiff was at a reasonably safe distance from the track, the flagman signaled him to stop, but he failed to obey the signal and was guilty of negligence in so doing and drove his team into a place of danger, the verdict should be for defendant. *Held*, that defendant was not prejudiced by the instruction, in that the language "and drove his team to a place of danger" deprived defendant of the right to a verdict on grounds otherwise sufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

Appeal from District Court, Hunt County; R. L. Porter, Judge.

Action by Willard Burk, by his next friend, against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Dinsmore, McMahan & Dinsmore, of Greenville, and Alex S. Coke, of Dallas, for appellant. Evans & Carpenter, of Greenville, for appellee.

HODGES, J. On December 21, 1910, while the appellee, Willard Burk, was attempting to drive a team of horses across appellant's track in the city of Greenville, he was thrown from the wagon and sustained the personal injuries for which he sues in this action. This is the second appeal in this case. A full statement of the material facts will be found in the opinion rendered by Justice Talbot in 146 S. W. 600. The evidence shows that appellant's track in the city of Greenville runs practically north and south, and near its freight and passenger depots is crossed at right angles by Washington street and Lee street. Wright street runs parallel with the railway right of way and a short distance from its main line at that point. We gather from the testimony that the west boundary line of Wright street is probably the eastern boundary of the appellant's right of way. The appellant's tracks at that point consisted of a main line, which lay on the western side of the right of way, and two switch tracks lying on the east. On the date above mentioned, and early' in the morning, the appellee was driving a team hitched to a wagon carrying a water tank, going west on Washington street. He testifies that he was familiar with the general conditions existing at the crossing and around the depot, but did not know the exact time of day or that a train was due to pass at that time. According to his version of the occurrence, he drove his team into Wright street a few feet east of the eastern switch track, and awaited a signal from a flagman stationed at that place. He received the signal of the flagman, he says, to proceed across, and started his team in that direction. Just as he approached the second switch track from the east, appellant's passenger train, going at a rate of speed estimated by him at from 10 to 15 miles per hour, dashed by, frightening his team and causing it to overturn the vehicle in which he was riding, and he was thereby injured about the hip, shoulder, and other portions of his body. He further testifies that there was a string of box cars on the north side of the Washington street crossing, extending from a few feet in the street some distance to the north; that these cars and the buildings in that vicinity obstructed his view of a train coming from the north, and he was thus prevented from seeing the passenger train before it reached the crossing. He further testifies that he looked as best he could, and was listening for the approaching train, but the noise of his wagon prevented his hearing it. This testimony, however, is contradicted by the flagman, who says that he observed the appellee as he approached the crossing, and, knowing that a train was to pass, gave him the signal to stop, but that he failed to obey the signal and continued to drive on. Other parties who were present and witnessed the accident testified that the appellee drove up to within 12 or 14 feet of the east track, and while standing there the train ran by and his team became frightened and overturned the wagon. The negligence relied on consisted mainly of the conduct of the flagman in giving the appellee a signal to cross when it was dangerous to do so, the running of the train at an unlawful rate of speed, and emitting steam making loud, unnecessary, and unusual noises. A trial before a jury resulted in a verdict in favor of the appellee for $3,000. The assignments of error are directed mainly at the charge of the court and the refusal of the court to give certain special charges requested by the appellant.

After submitting the issue presented by appellee's testimony of negligence on the part of appellant's flagman in giving a signal to the appellee indicating that it was safe for appellee to cross the tracks, the court gave the following as a part of his main charge: "Or if you believe from the evidence in this case that while Willard Burk was at a safe distance from the crossing the flagman gave a danger signal, indicating that there was danger and for said Willard to stop his team at a reasonably safe distance from the crossing, and if you find that said Willard did drive his team up and stop at the place where travelers usually stopped for the purpose of letting trains pass, and that such place was reasonably safe for that purpose, and that in so stopping at said place (if he did so stop) said Willard was using ordinary care for his own safety; and if you believe that as said team reached said place (if it did), or soon afterwards, the defendant's train and engine were propelled across said street crossing at a greater rate of speed than six miles per hour, if you find that the servants of defendant in charge of the engine caused or permitted steam unnecessarily to escape therefrom and make a loud, unusual, and unnecessary noise, and that the causing or permitting of the escape of said steam and such noise (if there was such unnecessary noise and steam) was negligence, as above defined, and that as the proximate result of the negligence (if any) as to the speed of said train, or as to the steam and noise, as above submitted, plaintiff's team became frightened and ran away, and plaintiff, Willard Burk, was injured as alleged, you will find for the plaintiff; unless you find for the defendant under other issues submitted to you." It is insisted that this charge is subject to the following objections: (1) That there was no evidence that Willard Burk drove his team and stopped at a place where travelers usually stopped for the purpose of letting trains pass, and that such place was reasonably safe for that purpose, and that the train ran across the street while Burk had stopped at such a place. (2) That this charge intimated that a safe place to stop was a place where travelers usually stopped. (3) That it submitted as an issue the speed of the train as an independent act of negligence, when there was no evidence authorizing the submission of that issue.

In disposing of these objections it is sufficient to say of the first that the record does not sustain the contention there made as to the sufficiency of the evidence upon that issue.

[1] The second objection is untenable.

[2] In considering the third objection it should be observed that the excessive speed of the train was pleaded as an independent ground of negligence by the appellee. The testimony shows that there was a city ordinance in force at that time limiting the speed of trains within the city limits to six miles per hour. Appellee testified that on the occasion of his injury he thought the train was going about 15 miles an hour; that it dashed suddenly from behind some box cars across the road in front of him, at the same time emitting steam and loud noises; and that his team became frightened. Another witness, who was near by at the time, testified that the train was going 8 or 10 miles per hour according to his estimate. At the instance of the appellant the court gave a special charge, which in effect instructed the jury not to find for the appellee on account of the speed of the train unless the jury believed the team took fright at the locomotive because it was moving at a greater rate of speed than six miles an hour, and that the team would not have taken fright if it had not been moving at a rate in excess of that above mentioned. The court qualified this charge, however, by telling the jury "that even though the said excessive speed of the train, if it was excessive, may not by itself alone have caused the fright of the team, yet if such excessive speed, if any, concurring with either the negligence of the flagman, if any, or the negligence, if any, as to the steam and noise, if any, proximately contributed to cause the fright of the team, defendant would be liable therefor." Under the evidence adduced upon the last trial as it appears in the record before us, we do not think it can be said as a matter of law that the speed of the train, accompanied by the usual noises as it emerged from behind the string of box cars which obscured it from the appellee's view, was not alone sufficient to frighten the team and cause the injury complained of. It would be attributing to the jury a gross lack of intelligence to say that under the various charges of the court bearing upon this particular issue they were misled into awarding the appellee a verdict for damages to which he was not legally entitled.

[3] It is claimed that the court erred in the following paragraph of his charge: (If you believe) "that when he was at a reasonably safe distance from the track the flagman by the usual means and signals signaled said Willard Burk to stop his team and wait for the passage of a train, and said Willard Burk failed or refused to obey such signal, if there was such a signal given, and was guilty of negligence in so failing (if you find he did so fail) and drove his team to a place of danger," followed by a direction to find for the defendant. The vice which the appellant contends is contained in this charge is the language, "and drove his team to a place of danger." It is insisted that by adding that language to the charge the court deprived the appellant of the right of an acquittal upon grounds otherwise sufficient; that the conditions grouped in other portions of the charge as a basis for a verdict in fa-

vor of the appellant were sufficient without the incorporation of that language. We do not think any harm could have resulted to the appellant from the use of the language objected to, because the facts show that Burk did drive his team to a place of danger; that is, a place where they became frightened and overturned his vehicle.

It is unnecessary to discuss the remaining assignments of error, and the judgment is affirmed.