MISSOURI, K. & T. RY. CO. OF TEXAS v. PATTERSON. (No. 7458.)

(Court of Civil Appeals of Texas. Galveston. May 7, 1918. On Motion for Rehearing, June 13, 1918.)

1. APPEAL AND ERROR ⚎732—ASSIGNMENTS OF ERROR—SUFFICIENCY.

Assignment of error that the court erred in overruling motion for new trial, because the verdict of the jury is against the great preponderance of the evidence, and is not supported by the great weight of the evidence, specifying that the evidence shows that plaintiff's damage would have resulted independent of the negligence of defendant, was insufficient, as too general, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 2020.

2. APPEAL AND ERROR ⚎742(6) — ASSIGNMENTS OF ERROR—SUFFICIENCY.

Assignment of error, assailing a verdict as excessive in the aggregate, with subjoined propositions that there was no right to recover at all, and that other causes were responsible for the damage, could not be considered as to the subjoined propositions.

3. APPEAL AND ERROR ⚎1002—SCOPE OF REVIEW—FINDINGS OF FACT.

Where the evidence would have justified either of two contrary conclusions, the appellate court cannot set aside the jury's adoption of either.

4. WATERS AND WATER COURSES ⚎126(2)— IMPOUNDING WATERS—DAMAGE TO CROPS — EVIDENCE.

Evidence held to support verdict for landowner for damages to crops by construction of railway embankment impounding waters and causing overflow.

On Motion for Rehearing.

5. APPEAL AND ERROR ⚎732 — SCOPE—ASSIGNMENTS OF ERROR—SUFFICIENCY.

Assignment of error that "court erred in overruling defendant's motion for new trial, because of error in giving paragraph 8 of the charge, as fully shown by defendant's written exceptions and objections filed thereto," was sufficient to permit its consideration on appeal.

Appeal from District Court, Waller County; J. D. Harvey, Judge.

Action by W. R. Patterson against the Missouri, Kansas & Texas Railway Company

of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

C. C. Huff, of Dallas, and Lane, Wolters & Storey and T. B. Blanchard, all of Houston, for appellant. Meek & Kahn, of Houston, and R. E. Hannay, of Hempstead, for appellee.

GRAVES, J. Appellee, Patterson, owned a plantation at the mouth of Iron's creek on the east bank of the Brazos river, slightly more than a mile north of where the railroad crosses the river a few miles from Brookshire, Tex. Laying the total amount claimed at $35,000, he sued appellant for damage to his land and for destruction of his own and certain other crops, alleged to have resulted in the spring of 1915 from the railway company's having so negligently constructed and maintained its railroad dump and bridge across the Brazos river and valley as to obstruct the natural course of the waters from the river and cause and force them to flow upon, over, across, and back upon his own and the other lands upon which the crops involved were growing, and thus to inflict the losses complained of. It was charged that at least 50 acres of the lands belonging to him were so washed and torn that their value was reduced from $75 to $20 per acre, and that all crops upon his remaining lands were destroyed. The balance of the aggregate damages sought was upon claims of other owners for a like destruction of their crops upon adjoining or adjacent lands, which had been assigned to appellee. After general demurrer and denial, the railway company, among other things, specially pleaded that it was guilty of no negligence in the construction and maintenance of its dump, bridge, or other facilities complained of, that they were necessary, and had been built in a most scientific manner by experienced and thoroughly qualified engineers, with sufficient openings left in the embankments to permit drainage through the river of all waters from usual, ordinary, and known rainfall incident to that country, but that, prior to the overflow complained of, excessive rains fell all over the country drained by the Brazos river in such quantities that the bed of the river was insufficient to carry the water off, and it spread out on all lands, and destroyed crops on both sides of the river for hundreds of miles above and below appellee's lands; that this unusual rainfall, and not any alleged negligence of appellant, was the proximate cause of whatever loss appellee suffered; and that as the direct consequence thereof he would have suffered the same loss, even if the railroad bridge and embankment had not been there. A trial before a jury resulted in a verdict and judgment in favor of appellee in the sum of $27,582.50, $2,000 of which was for damage to his land, the balance for destruction of crops. From that judgment this appeal is prosecuted.

[1] At the outset, by motion duly presented and taken with the case, objection is made to this court's consideration of appellant's assignments of error, on the ground that they do not comply with the statutes and rules, in that they are too general and point out no specific error. Upon considering it, our conclusion is that the motion is well taken, and must be sustained, except as to assignments 4, 5, and 7.

The first three assignments relate to the same matter, and all have this first provision in common:

"The court erred in overruling defendant's motion for a new trial, because the verdict of the jury is against the great preponderance of the evidence, and is not supported by the great weight of the evidence, in this."

In consecutive order they each then continue, respectively, as follows: First assignment:

"The great preponderance of the testimony, if not all of the testimony, conclusively shows that plaintiff's crops would have been destroyed by the flood waters of the Brazos river even if there had been no railroad embankment and bridge constructed across the Brazos river and the Brazos bottom at the point in question."

Second assignment:

"That the great weight of the testimony developed conclusively that the erection of said bridge and construction of said culverts and embankment were not the proximate cause of the damage to plaintiff's land."

Third assignment:

"That the great preponderance of the testimony developed that plaintiff's crops were destroyed and his land damaged by water coming directly from the Brazos river, and not by any backwater impounded by said embankment or railroad bridge."

Manifestly, we think, no one of these specifications calls the lower court's attention to any evidence indicating wherein the verdict was not supported by the evidence, or why appellee was not entitled to recover, nor distinctly specifies any particular matter or thing showing how appellee's crops would have been destroyed by flood waters, if there had been no railroad bridge or embankment, but each and all state a mere general conclusion, amounting in final substance to an assertion that the verdict of the jury is contrary to the great preponderance of the evidence. It has been uniformly held that such an assignment is insufficient and cannot be considered. Article 2020, Vernon's Sayles' Texas Civil Statutes; Speight v. Speight, 176 S. W. 641; Alexander et al. v. Louisiana Lbr. Co., 154 S. W. 236, and authorities cited therein; Degener v. O'Leary, 85 Tex. 171, 19 S. W. 1004; San Antonio Traction Co. v. Emerson, 152 S. W. 470, and authorities therein cited; Harlingen L. & M. Co. v. Houston Motor Co., 160 S. W. 629; W. U. Tel. Co. v. Hartfield, 138 S. W. 418.

What has been said concerning the first three assignments applies with equal force to the sixth and eighth, which are as follows: Sixth:

"The court erred in overruling defendant's motion for a new trial, because the court erred in giving to the jury paragraph 8 of its charge, as is fully shown by the defendant's written exceptions and objections filed thereto."

Eighth:

"The court erred in overruling the defendant's motion for a new trial, because the verdict of the jury conclusively developed that the jury, in arriving at their verdict, did not base said verdict upon the preponderance of the testimony or the weight of the evidence, but arrived at same wholly upon their sympathy for the plaintiff and their passion and prejudice against the defendant."

To say that the court erred in giving paragraph 8 of its charge to the jury is no such specification of error as clearly identifies and makes intelligible the point of the objection, nor does it point out any particular in which it constituted error to give that part of the charge, but is a mere general conclusion of the pleader. Likewise, to charge that the verdict conclusively develops that the jury did not base it upon the preponderance or weight of the testimony, but upon sympathy, passion, and prejudice, is far from pointing out in what respect the evidence is insufficient to support the verdict, and only amounts to a general assertion that it is against the preponderance of the evidence.

In this state of the record, under the authorities cited, it becomes our duty to decline consideration of assignments 1 to 3, inclusive, and 6 and 8.

[2] The seventh assignment assails the verdict as being excessive in amount and as showing that the jury, in rendering a verdict for $27,742, did not consider the case upon its merits, but must have been and were governed purely by passion and prejudice, and not by the evidence. There are three propositions subjoined, but neither the first nor the third is germane to the assignment, and for that reason do not merit consideration. The complaint made in the assignment is against excessiveness in the aggregate amount of the verdict resulting from the influence of passion and prejudice, while the two propositions mentioned assert: First, a lack of right to recover at all for the crops of others who assigned their claims for damages •thereto to appellee, upon the alleged ground that no proof of the value and cost of cultivating and marketing such crops was made; and, second, a failure to take into consideration the effect of a storm occurring after the overflow, which it was claimed, independent of the overflow, caused a much less yield of crops in the Brazos bottom that year than the average yearly yield. Clearly neither of these matters could be said to specifically point out wherein the verdict was the product of passion and prejudice.

The second proposition under this assignment presents that the award as a whole is so far in excess of what the undisputed evidence shows appellee entitled to as to indi-

cate that the jury, in arriving at it, were improperly influenced by sympathy, passion, or prejudice; but, after an examination of the statement of facts, we are unable to say that any such result appears.

The evidence is very voluminous, comprising over 300 pages, and no useful purpose would be served, we think, by attempting to summarize it here. There was evidence showing the entire acreage of the lands involved, both of appellee's own and of those persons who assigned their claims for destroyed crops to him; the fact of such assignments, the number of acres of all the lands in crops at the time; their condition just before and likewise just after the overflow, and showing the· complete destruction· of all the crops thereon; the depreciation in value of the 50·acres of washed or torn land; and, finally, sufficient data from which the jury could estimate the reasonable market value of all the crops as they stood in the field at the time of their destruction, after taking into consideration what it would have reasonably cost to have matured, harvested, and marketed them. In this state of the record it certainly cannot be said that the undisputed proof showed the verdict to be the result of sympathy, passion, or prejudice, and the assignment cannot be sustained.

Assignments 4 and 5 alone remain. Neither of these raises any issue as to its preponderance, but only that there is no evidence justifying a recovery to appellee, either for damage to his 50 acres of land, or for injury to the crops growing on the land owned by him. The form of both these assignments is also objected to, but we conclude that they raise the issue stated.

[3, 4] To the findings already made may be added that the evidence disclosed two antagonistic theories as to how the damages complained of were brought about. That offered by appellee tended to support his averments that the railroad embankment and bridge so obstructed diverted the natural flow of,· and impounded the waters of, the river as to cause them both to flow across and back up on the lands affected; while that for appellant tended to substantiate its main defense that the flood was so great and the volume of water coming down the river so overwhelming as to have necessarily caused any injuries shown to have resulted, even if its bridge and embankment had not been there. The body of the testimony as a whole, in our opinion, was susceptible of the application of either theory; and, under that conclusion, this court is not at liberty to set aside the jury's adoption of the one advanced by appellee. Appellee himself testified:

"The Missouri, Kansas & Texas Railroad was not there in 1885. The lands north of the present Missouri, Kansas & Texas Railroad tracks, including Enos' land and my land, were not overflowed in 1885. The overflows, as I remember them, that I have seen in the bottom, I think were in 1884, 1885, 1890, or 1891, and 1899, December, 1913, and April, 1915. In

none of these overflows that I ever saw in the Brazos valley prior to the building of the present railroad dump by the Missouri, Kansas & Texas Railroad did I ever see water come over the valley and go back into the Brazos river, into its banks, along that country north of the railroad bridge. I lived there for 30 years until I moved to Brookshire."

The undisputed proof showed that the width of the valley at the point in question upon the east side of the river was about 3½ miles, the railroad embankment extending all the way across, and at the time of this overflow there were, at intervals throughout that entire distance, only four culverts in the otherwise solid dump, with aggregate openings of but 638 feet for the passage of water through it; that these openings were insufficient to permit the escape of the water of the 1915 overflow, and consequently the railroad embankment caused the impounding of between 2 and 3 feet more of such water upon the north than accumulated upon the south side of the railroad, which condition lasted for some days; that on the west side of the river there was along the railway line first an open trestle for about 75 yards back from the bridge; then the solid embankment or dump for something over a mile, crossing the lowlands bordering the river for 300 or 400 yards to higher land called the second river bank; thence through that to and across a low depression or drain, 500 or 600 feet wide, known as Old river, near the center of which a small culvert or opening of 28 feet was left, that being the only opening in the railroad dump on the west side of the river. Coinciding only in the general features just recited, the lines of proof presented by the contending litigants then quickly and widely diverge. The witnesses for appellee, including the civil engineer, Mr. Ludwig, testified that this drain, known as Old river, supposed to be the abandoned former channel of the Brazos river, came out of the river quite a distance above, and ran back into it some distance below the railroad, and when, unobstructed, served as a natural outlet for the excess waters coming down the Brazos during flood time, but that after the railroad dump was put in there, in high-water time it dammed up the water, which could not pass through the 28-foot culvert, and so diverted and forced it across the river toward the east and upon and across the lands here involved. In fact the witness W. J. Dozier testified to having seen that very thing actually happen during the overflow that caused the damage here recovered for.

It is deemed unnecessary to pursue the inquiry further, or to elaborate the details of the evidence. That enough has been mentioned to show there was sufficient basis in the testimony for the verdict rendered is not, we think, subject to doubt. Such being the case, since the assignments now under review

merely assert the contrary, they cannot prevail.

No reversible error being pointed out, it has been ordered that the judgment be affirmed.

Affirmed.

### On Motion for Rehearing.

[5] This motion for rehearing has convinced us that appellant's sixth assignment of error, challenging the correctness of paragraph 8 of the trial court's charge, should have been considered; that has accordingly been carefully done upon rehearing, but the conclusion is reached that it points out no error. The objection made to that paragraph of the charge was that it assumed as an established fact that the roadbed and bridge of the railway company had been negligently and unskillfully constructed. A close examination of the charge, however, convinces us that it was not reasonably subject to such criticism, and the assignment is overruled.

Unconvinced of error in other respects in our original disposition of the case, the motion for rehearing has been overruled.

Overruled.