MISSOURI, K. & T. RY. CO. OF TEXAS v. BURK.

(Court of Civil Appeals of Texas. Dallas. April 6, 1912.)

1. TRIAL (§ 85*)—OBJECTION TO EVIDENCE— EVIDENCE ADMISSIBLE IN PART.

A party objecting to the exclusion of evidence offered as a whole, and inadmissible in part, cannot complain of the exclusion of the whole.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 223–225; Dec. Dig. § 85.*]

2. WITNESSES (§ 372*)—CREDIBILITY—BIAS— SUITS AGAINST PARTY.

A witness for the plaintiff, in an action against a railroad for personal injuries, who denied that he had any prejudice or ill will towards defendant, and who testified as to material matters in favor of plaintiff and contradictory of several witnesses to the accident, was asked, on cross-examination, whether he had himself previously had a suit for personal injuries against another railroad, and whether he then had a suit or claim against defendant for personal injuries to his wife, and whether his father and sister and brother, within in the last two years, had each had a suit against the defendant for personal injuries.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

*Held,* that such facts were admissible as bearing on the bias of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1192–1199; Dec. Dig. § 372.*]

3. RAILROADS (§ 348*)—ACCIDENT AT CROSSING—INJURIES—EVIDENCE—MODE OF RUNNING TRAIN.

Evidence, in an action for personal injuries resulting from the frightening of plaintiff's team by defendant's train at a crossing, *held* insufficient to show that those in charge of the train permitted the escape of an unnecessary and unusual volume of smoke and steam, or caused the train to make unnecessary and unusual noises.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. § 348.*]

4. RAILROADS (§ 305*)—OPERATION—CROSSINGS—CARE IN RUNNING TRAINS.

The servants of a railroad have the right to move trains at crossings with usual and necessary noise, without keeping a lookout for frightened teams; but where they permit unusual and unnecessary noises they are required to exercise care and see that there are no teams in position to be frightened thereby.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 968–971; Dec. Dig. § 305.*]

5. APPEAL AND ERROR (§ 1031*)—HARMLESS ERROR—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

The submission of an issue, not raised by the evidence, is reversible error, where it does not appear whether the jury have been misled thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 4038–4046; Dec.Dig. § 1031.*]

6. TRIAL (§ 194*)—INSTRUCTIONS—PROVINCE OF COURT AND JURY—WEIGHT OF EVIDENCE—"DASH."

An instruction, in an action against a railroad for personal injuries resulting from the frightening of plaintiff's team at a crossing, that if defendant's train dashed out from behind box cars on the track in view of plaintiff's team, and made unnecessary noise by the escape of steam, defendant failed to exercise ordinary care, was objectionable as being an instruction on the weight of the evidence, the word "dash" meaning to draw with violence or haste; to rush with violence; to strike violently; to shatter.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

7. RAILROADS (§ 351*)—ACCIDENT AT CROSSINGS—INSTRUCTIONS.

An instruction, in an action against a railroad for personal injuries resulting from the frightening of plaintiff's team, that if a person of ordinary care, under the circumstances, would have stopped and listened, and if plaintiff had done so he would have discovered the approach of the train before reaching the place of danger, is objectionable for failure to submit whether a prudent person would have "looked" for an approaching train.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

8. TRIAL (§ 256*)—REQUESTS—FURTHER OR MORE SPECIFIC INSTRUCTIONS.

An instruction, erroneous because of incompleteness or omission, affords no ground for a reversal, in the absence of a requested special charge supplying the omission.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

9. RAILROADS (§ 351*)—CROSSING ACCIDENT—INSTRUCTIONS—NEGATIVE OF ISSUE.

In an action for personal injuries resulting from the frightening of plaintiff's team by defendant's train at a crossing, where it was controverted whether the train was moving in excess of six miles an hour, contrary to ordinance, and whether, if so, its rate of speed was the proximate cause of plaintiff's team becoming frightened, and where the court gave the affirmative charge for the plaintiff, it was its duty to present to the jury affirmatively the negative side of the issue.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

Appeal from District Court, Hunt County; T. D. Montrose, Judge.

Action by Willard Burk, by his next friend, against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Alex. S. Coke, of Dallas, and Dinsmore, McMahan & Dinsmore, of Greenville, for appellant. Evans & Carpenter, of Greenville, for appellee.

TALBOT, J. Willard Burk, by next friend, brought this suit against the appellant to recover damages for personal injuries charged to have been inflicted upon him through the negligence of appellant's servants. It is alleged, in substance, that plaintiff, driving a gentle team, drawing a wagon on which was a water tank, was traveling westward on Washington street, in the city of Greenville, toward the crossing of defendant's railway tracks over said street; that in so approaching the said railway crossing buildings and cars standing on side tracks obstructed the view of trains approaching said crossing from the north; that defendant kept a flagman at said crossing, for the purpose of keeping a lookout and signaling travelers to cross the railway tracks, or to stop, as occasion required; that when plaintiff's team approached the railway crossing the flagman signaled plaintiff to drive over the crossing, and that plaintiff, in obedience to said signal, drove his team to the first track crossing said street; that when he had gained said position a passenger train of the defendant, without the knowledge of the plaintiff, came from the north at a rapid rate of speed upon and over the said crossing, the engine being in front; that the said locomotive approached without signal or warning and went upon and over said crossing at a rapid speed, exceeding six miles an hour, the maximum rate as fixed by the ordinances of the city of Greenville, and that the locomotive, in passing over said street, emitted great quantities of steam and smoke, and made a tremendous noise; that by reason of said acts and omissions of defendant's servants plaintiff's team became frightened, ran away, and broke the wagon, and threw plaintiff violently upon the ground, whereby the plaintiff was seriously and permanently injured. The defendant answered by general denial and by the pleas of contributory negligence. The case was tried by the court and

a jury, and the trial resulted in a verdict and judgment for the plaintiff for $3,000. From this judgment, the defendant appealed.

The evidence, so far as is necessary to state, shows that appellant's railroad runs north and south through the city of Greenville, and crosses Lee street and Washington street, which streets run east and west. Washington street is south of Lee street, and the distance from the north edge of Washington to the south edge of Lee street is about 200 feet. At Washington street, and between Washington street and Lee street, appellant has three parallel tracks, used for loading and unloading and for standing freight cars, and the three tracks all cross Washington street. Just west of these three tracks is a track, called the "main line," on which track passenger trains run in approaching and leaving appellant's passenger station, which is situated on the north side of Lee street. The plaintiff, a boy 16 years of age, was driving a pair of mules, drawing a wagon on which was a zinc water tank, filled with water, traveling on Washington street westward toward the crossing of said street over appellant's railway tracks. He was seated on a spring seat, which was fastened just above the front part of the water tank. When the team reached some point in the vicinity of the most eastern track, a locomotive, pulling a passenger train, came from the north upon Washington street on the main line track, which is the fourth track on approaching from the east. When the locomotive went on the street crossing, the mules ran backward, pushing the wagon toward the south side of Washington street, and turned short around to the right, broke the front wheels loose from the rest of the wagon, and threw plaintiff out and injured him.

[1, 2] The first assignment of error is to the effect that the court erred in refusing to permit the defendant to prove by the plaintiff's witness Henry Delancy, on cross-examination, after said witness had denied that he had any prejudice or ill feeling for the defendant, that he himself had theretofore had a suit for personal injuries against the St. Louis Southwestern Railway Company of Texas, and had, at the time he was testifying, a suit or claim against this defendant for personal injuries, alleged to have been inflicted on his wife, and that the father of the witness, and a sister of the witness, and a brother of the witness, had each, within the last two years, had a suit against this defendant for personal injuries, as shown by defendant's bill of exception No. 1. The admissibility of testimony showing the pendency of or recent litigation between a witness and the party against whom he testifies as a fact or circumstance from which hostility or prejudice on the part of the witness against such party may be inferred is not denied by appellee; but he contends that proof of present or past litigation between the relations of such a witness and the party against whom he testifies is not admissible for that purpose; and that, as the testimony excluded in this instance was offered as a whole, the exclusion of it was not error. That the testimony was offered as a whole is apparent, and, being so offered, if a part of it was inadmissible, appellant is in no position to complain of the exclusion of all of it. But we are inclined to the opinion that all of the testimony was admissible. The rule seems to be well established that, upon cross-examination, inquiry may be made "into the situation of the witness with respect to the parties and to the subject of litigation; his interest, his motives, his inclination and prejudices, etc., may be fully investigated and ascertained." It is said that a biased witness is one who has a motive to color his statements, to suppress the truth, or to state what is false. 17 Cyc. p. 818. So that it has been held that, as all issues of fact must be determined by the testimony of witnesses, any fact which bears upon the credit of a witness, whether it goes to his indisposition to tell the truth, his want of opportunity to know the truth, his bias, his interest, his hostility to the party against whom he testifies, or any other circumstance which, according to common observation and experience, tends to create a partisan feeling, would be a relevant fact, and admissible. Evansich v. Railway Co., 61 Tex. 24; Railway Co. v. Brown, 78 Tex. 401, 14 S. W. 1034; 17 Cyc. p. 818; Philadelphia v. Reeder, 173 Pa. 281, 34 Atl. 17. The witness Delancy testified strongly to certain material matters in favor of the plaintiff and contradictory of three or four witnesses who, according to their testimony, witnessed the accident resulting in the injuries of which the plaintiff complains, and had equal opportunities of seeing and knowing the facts in relation thereto; and under the rule announced, especially in view of this conflict in the evidence, it would seem that the testimony excluded should have been admitted.

In the third paragraph of the court's general charge, the jury was instructed as follows: "Or, if you believe from the evidence, as the train dashed out from behind box cars on defendant's tracks in view of plaintiff's team, defendant's agents or servants in charge of said engine and train unnecessarily caused and permitted the escape of steam and smoke in such volumes, or by making unnecessary noise caused plaintiff's team to become frightened, and injured plaintiff, as alleged," etc., and that in so doing the defendant failed to exercise such care as an ordinarily prudent person would have exercised under similar circumstances, to find for the plaintiff. This charge is objected to on the grounds, among others, (1) that the submission of the issue with respect to unnecessary escape of steam and smoke was error, because there was no evidence to authorize it; (2) that the language used in said charge,

"as the train dashed out from behind the box cars on defendant's tracks," is upon the weight of the evidence, in that it states, as a matter of fact, that the train did "dash" from behind the box cars.

[3, 4] We think the evidence was insufficient to warrant a finding that the servants of the defendant caused or permitted the escape of an unnecessary and unusual volume of steam and smoke, or caused the train, as it passed over the crossing where the accident occurred, to make an unnecessary and unusual noise; and that therefore the submission of those issues was material error. There is no evidence that the servants of defendant saw the plaintiff's position, with reference to the railroad track upon which they were operating the train, before the happening of the accident; and it cannot reasonably be said therefrom that the steam and smoke emitted from the engine and the noises caused by the moving train were more than necessary and usual in the operation of the train. This being true, the defendant could not be charged with negligence because of the manner in which the train was being operated in this respect. Where the servants of a railway company allow unusual and unnecessary quantities of steam to escape from their engine, or make an unusual and unnecessary noise at a crossing of a public street or road, they are required to exercise care and see that there are no teams in position to be frightened by such unusual escape of steam or noise, and a failure to do so may be accounted negligence; but they have the right to move their trains with the usual and necessary noises, etc., without keeping a lookout for frightened teams at such crossings, and negligence cannot be predicated upon that manner of operating a train. Railway v. Boesch, 103 Tex. 256, 126 S. W. 8.

[5] It is reversible error to submit, in a charge to the jury, an issue, not raised by the evidence, and where it is not clear whether the jury have been misled by such error. Andrews v. Smithwick, 20 Tex. 111; Railway Co. v. Gilmore, 62 Tex. 391; Railway Co. v. McCoy, 90 Tex. 264, 38 S. W. 36; Wood v. Texas Cotton Produce Co., 88 S. W. 496. Whether the defendant's servants on the occasion in question unnecessarily caused or permitted such volumes of steam and smoke to escape from their engine and caused it to make such unnecessary noises as to cause plaintiff's team to become frightened thereat was submitted by the charge here complained of as a separate and distinct ground of negligence, and, a general verdict having been returned, we are unable to say that the jury was not misled by such submission. On the contrary, it may safely be said that the charge was calculated to impress the jury with the idea that the court was of the opinion that there was evidence to support the issue, and that their verdict may have been based upon a determination of it in favor of the plaintiff.

[6] In respect to the second ground of objection to this charge, it may be said that the charge does assume as a fact proved that the train dashed out from behind the box cars standing on defendant's railroad track, and that the same was calculated to convey the impression that the train was running at a very rapid rate of speed. The verb "dash," according to the standard English dictionaries, means: "To draw with violence or haste; to rush with violence; to strike violently; to shatter." The charge was therefore probably upon the weight of the evidence; and, while it is not likely that we would reverse the case on this ground alone, it is proper to say that the court's charge should be so framed on another trial as to eliminate the error.

[7, 8] The ninth assignment is that the court erred in the fourth paragraph of his charge in that part thereof which is as follows: "And if you believe that a person of ordinary care and prudence, under the circumstances surrounding plaintiff at the time, would have stopped and listened, and that if he should have stopped and listened he would have discovered the approach of the said train before reaching a place of danger," etc. The specific objection to this charge is that it fails to submit to the jury whether a prudent person would have *looked* for an approaching train. We are of opinion that the charge, without the word "looked," was incomplete, but that the error was one of omission, which furnishes no ground for a reversal, in the absence of a requested special charge supplying the omission.

[9] The defendant requested the court to charge the jury as follows: "If you believe from the evidence that the plaintiff was not guilty of negligence in driving his team to the point where it was at the time defendant's locomotive crossed over Washington street, and if you further believe from the evidence that defendant's locomotive, as it passed over Washington street, was moving at a speed greater than six miles an hour, and if you believe from the evidence that plaintiff's team took fright at the said locomotive, nevertheless, unless you further believe from the evidence that plaintiff's team took fright at said locomotive, because it was moving at a speed greater than six miles per hour, and that the team would not have taken fright if the said locomotive had been moving at a speed of six miles per hour or less, then, and in that event, you cannot find for plaintiff by reason of the speed of the locomotive and train." The refusal of this charge is assigned as error, and we are inclined to think the assignment is well taken. In the general charge, the jury were instructed, in substance, that if they believed from the evidence that, in propelling the engine

and train across Washington street, defendant's agents and servants propelled the same at a greater rate of speed than six miles an hour, and that the running of said train at a greater rate of speed than six miles an hour was the proximate cause of plaintiff's team becoming frightened and plaintiff thereby being injured, to find for plaintiff. Whether the train was moving at a greater rate of speed than six miles an hour, and whether, if it was, the rate of speed at which it was running was the proximate cause of plaintiff's team becoming frightened, was a controverted issue; and in such case, when requested, it becomes the duty of the court to present to the jury affirmatively the negative side of the issue. Railway Co. v. Ayres, 83 Tex. 268, 18 S. W. 684; Railway Co. v. Conn, 100 S. W. 1019; Northern Texas Traction Co. v. Moberly, 109 S. W. 483. The proposition urged by the appellee to the effect that, where the plaintiff alleges and makes proof of two or more grounds of negligence, and either of said grounds contributes proximately to cause the injury, the defendant is liable therefor does not answer the question as presented here. The case was not submitted to the jury upon the theory that, if the rate of speed at which the train was moving concurred with some one or all of the grounds of negligence submitted to them, the defendant would be liable; but the running of the train at a greater rate of speed than six miles an hour, in violation of the ordinance of the city of Greenville, was submitted as a distinct ground of negligence, the existence of which alone would authorize a verdict in favor of the plaintiff, if it was the proximate cause of plaintiff's mules taking fright. The issue being thus submitted, the defendant was entitled, as above stated, to have affirmatively presented the negative side of that issue. The other assignments disclose no reversible error, and will be overruled.

For the reasons indicated, the judgment is reversed, and the cause remanded.