**PAYNE, Federal Agent, v. BANNON.**
**(No. 8626.)**

(Court of Civil Appeals of Texas. Dallas. March 4, 1922.)

**1. Trial ⬉191(10)—Instruction held to assume no notice was given employee of starting machinery.**

In an action for injuries to a railroad employee, an instruction authorizing verdict for plaintiff if the jury found such injuries were occasioned by the act of another employee, who was operating the machine on which defendant was working, in starting the machine without notice or warning to plaintiff that he was about to do so, was objectionable as assuming that the machine was started without notice or warning to the plaintiff, if that was a controverted issue in the case.

**2. Trial ⬉191(10)—Weakness of defendant's evidence does not justify an instruction assuming contrary facts.**

An instruction assuming that a machine was started without notice or warning to plaintiff employee was erroneous, where the absence of such notice was an issue under the pleadings, and the evidence on behalf of defendant that notice was given, though weak, was sufficient to take that issue to the jury.

**3. Trial ⬉191(10)—Instruction may not assume a duty to warn, where there is evidence to show no duty.**

In an action for injuries to a railroad employee, evidence that it was the custom for some one to tell the operator of the machine when they were ready to have it started, and for all of them to get out of its way, is sufficient to warrant the jury in finding that the operator of the machine owed no duty to warn other workmen before he started the machine, so that an instruction assuming that he did owe such duty was erroneous.

**4. Trial ⬉191(10)—Instruction held to assume machine was started without ascertaining safety of plaintiff.**

An instruction, predicating a verdict for plaintiff on a finding his injuries were occasioned solely upon the act of another employee in starting a machine before seeing that plaintiff was in a position of safety, assumed that the machine was started before the operator ascertained that plaintiff was in a position of safety.

**5. Trial ⬉191(10)—Instruction held not erroneous as assuming duty to see plaintiff was in place of safety.**

An instruction, predicating assumption of risk on a finding that plaintiff knew the machine would be started without first seeing that he was in a place of safety, was not erroneous as assuming that it was the duty of the operator of the machine to see that plaintiff was in a place of safety before starting the machine.

**6. Master and servant ⬉291(13)—Instruction on foreseen danger from starting dangerous machine without warning held properly refused.**

Where the court had properly defined negligence and proximate cause as used in the instructions, and it appeared from the evidence that the machine by which plaintiff was injured was necessarily dangerous to a person who was in close proximity thereto when it was started, it was not error to refuse an instruction requested by defendant that, unless they believed an ordinarily prudent person, situated as was the operator of the machine, could have reasonably foreseen and anticipated injury from starting the machine without warning to those in proximity thereto, they should find for defendant.

**7. Trial ⬉260(8)—Requested instruction on contributory negligence held covered.**

It was not error to refuse defendant's requested charge on contributory negligence,

where one paragraph of the court's general instructions correctly presented that issue, and other paragraphs required a finding that plaintiff's injuries were occasioned solely by defendant's negligence.

**8. Negligence ⚖️101 — Instruction on employee's contributory negligence held erroneous under federal act.**

Where it was conceded that plaintiff and defendant were both engaged in interstate commerce at the time of the plaintiff's injuries while in defendant's employ, a requested instruction on contributory negligence, which directed a verdict for defendant if the jury should find such negligence, was erroneous, since such negligence under the Federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) could only reduce the recovery proportionately and not bar all relief.

**9. Trial ⚖️228(2)—Instruction permitting recovery for plaintiff should conclude with saving reference to other instructions as to the defenses raised.**

In an action for injuries to a servant, an instruction, stating the findings which entitled plaintiff to recover without referring to the defenses of assumption of risk and contributory negligence, should conclude with a saving clause referring to other instructions on those issues.

**10. Trial ⚖️186, 191(1)—Instructions should not be considered to be on the facts unless they clearly are.**

The court should assume that jurors are men of average intelligence and that they will use such intelligence in construing the instructions, and should not hold an instruction erroneous as assuming facts or as a comment on the facts on highly technical and refined deductions therefrom, but only where the language employed is, within its own terms, clearly a charge or comment on the weight of the evidence.

**11. Damages ⚖️173(1)—Discharge of plaintiff for fraud on defendant is not admissible to test ability to labor.**

In an action for injuries to an employee, testimony by plaintiff that he was discharged by defendant because he was carrying "dead men" on the pay roll and receiving some of the money was not competent on the issue of plaintiff's ability to labor and to earn money.

**12. Witnesses ⚖️370(5)—Discharge of plaintiff for fraud on defendant competent to show bias.**

In an action for injuries to an employee, testimony, on cross-examination of plaintiff, that he was discharged by defendant because he was carrying "dead men" on the pay roll and receiving the money, was admissible to show bias or prejudice by plaintiff against defendant.

Appeal from District Court, Freestone County; A. M. Blackmon, Judge.

Action by L. P. Bannon against John Barton Payne, as Federal Agent. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Boyd, Bell & Smith, of Teague, and Thompson, Barwise, Wharton & Hiner and F. B. Walker, all of Fort Worth, for appellant.

Williford & Geppert, of Teague, for appellee.

VAUGHAN, J. This is the second appeal in this case. For opinion on former appeal, see Hines, Director General of Railroads, et al. v. Bannon (Tex. Civ. App.) 221 S. W. 684.

This is an appeal from a verdict and judgment in the sum of $2,500 rendered in favor of appellee on the 9th day of December, 1920, as damages for personal injuries claimed to have been sustained by appellee through negligence on the part of appellant, his servants and employees, on or about the 21st day of November, 1918.

Appellee, by his second amended original petition, bases his right to recover on the following alleged acts of negligence:

"That while engaged in carrying out the instructions of one Ray Hearne, and while attempting to raise a portable brace connected with said dirt spreader to an angle of 45 degrees, that it became the duty of said Ray Hearne, prior to the time of turning on the air to raise the wing of said dirt spreader, to see that no one was raising said portable brace and that no one was close to said brace. That it was customary for the one who had charge of said dirt spreader not to turn the air on for the purpose of raising the brace until every one was out of danger, and that the said Ray Hearne knew, or should have known, that plaintiff was in a place of danger, but that he turned the air on with a violent jerk, which caused the brace to descend in a violent manner, causing the brace to slip and injure appellee's hand.

"That it was the duty of the said Ray Hearne to give warning to plaintiff that he was going to turn air on, and that it was customary to give such warning in order that any one in close proximity to said brace or wing might be given an opportunity to protect himself, but that the said Ray Hearne refused to give plaintiff any warning that he was going to turn the air on, and that the said Ray Hearne knew, or could have known, that the plaintiff was in a position of danger and that turning the air on without giving warning would likely cause plaintiff injury."

Appellant answered on the merits as follows: General denial; pleading specially that at the time appellee was injured he and appellant were engaged in interstate commerce and that by reason thereof the case was one to be determined by the Federal Employers' Liability Act and amendments thereto (U. S. Comp. St. §§ 8657–8665) ; that if appellee received any injuries as alleged, that he assumed the risk thereof under the said Employers' Liability Act and the amendments thereto, and that at the time appellee was injured he had his hand at an improper place and at a place he was not required to

have it in the discharge of his duties, and that the appellee knew thereof and knew the danger, and, as a result thereof, he assumed the risk of any injuries sustained to his hand. Also, that appellee was guilty of contributory negligence, which was the sole, direct, and proximate cause of his injuries and, therefore, under the Employers' Liability Act and the amendments thereto, he could not recover any sum; and, in the alternative, that if appellant was mistaken as to the appellee's negligence being the sole, direct, and proximate cause, then such negligence was a concurring cause, and that if it should be found that appellant was liable and that appellee had been injured, that then his damages should be diminished in proportion to his negligence as provided for in the Federal Employers' Liability Act; and that appellee was guilty of contributory negligence in having his hand at an improper place at the time he was injured.

It was admitted that at the time of the injury the parties were engaged in interstate commerce. Appellee was injured while in the performance of his duties under his employment assisting in the operation of a machine used to spread dirt upon the roadbed of the Trinity & Brazos Valley Railway Company. The spreader was located upon and attached to a flat car and had parts referred to in the pleadings and evidence as "wings," which extended from the car to the track by which the dirt was spread. The parts so used for spreading the dirt were lowered and raised while in use by means of a steel cable; the motive power being compressed air contained in a drum upon the car. There was a portable brace or arm attached to the floor of the car. When not in use, this lay upon the floor. When it was desired to operate the spreader, this brace would be raised and would extend outward from its base at an angle of about 45 degrees. The cable was attached to the part of the machine by which the dirt was spread and passed thence through the slot at the outer end of the brace, thence to pulleys upon a superstructure built upon the car, and thence to the motive power operated by the compressed air in the drum. In raising and lowering the part of the machine by which the dirt was spread, it was necessary that the portable brace or arm be raised and placed approximately at an angle of 45 degrees; otherwise, when the motive power was applied the brace would raise upward or suddenly descend. While operating the machine it was necessary to raise the "spreader" and, immediately preceding the accident, the brace had fallen. Appellee was assisting is replacing the brace in an upright position at an angle of 45 degrees, and, while so engaged, the air was applied by the operator and the brace suddenly, swiftly, and with great force descended, striking appellee's left hand, crushing and mangling same, as shown by the testimony of appellee.

Paragraph 8 of the court's instructions is questioned by first assignment of error as being on the weight of the evidence, in that it assumed that Ray Hearne did not give any notice or warning that he was going to turn the air on, same being an issuable fact; and by the third assignment said paragraph is further challenged for the reason that same assumes and instructs the jury to the effect that there was an absolute duty on the part of said Ray Hearne to give notice or warning that the air would be turned on and, therefore, was a charge on the weight of the evidence, it assuming an issuable fact.

Said paragraph 8 is as follows:

"Now, bearing in mind all the foregoing instructions, you are instructed that if you find and believe from a preponderance of the testimony in this case that the plaintiff, L. P. Bannon, while acting in the scope of his employment with the defendant, sustained injuries; and that such injuries were occasioned by the act of one Ray Hearne, who was then operating the air drum upon a dirt spreader, of the defendant in turning on the air in order to raise the wing of said dirt spreader, without notice or warning to the plaintiff that he was about so to do; and if you further believe from a preponderance of the testimony that this act upon the part of the said Ray Hearne constituted 'negligence,' as that term has heretofore been explained to you; and that such negligence was the direct and proximate cause of plaintiff's injury, if any—then you are instructed to find for the plaintiff, and assess his damages in the manner hereinafter instructed."

[1] The first assignment is directed to the following language of said paragraph:

"And that such injuries were occasioned by the act of one Ray Hearne, who was then operating the air drum upon the dirt spreader of the defendant, in turning on the air in order to raise the wing of said dirt spreader without notice or warning to the plaintiff that he was about so to do."

Tested by the following decisions: St. Louis & S. W. Ry. Co. of Tex. v. Smith (Tex. Civ. App.) 63 S. W. 1064; Texas Central Ry. Co. v. Waldie (Tex. Civ. App.) 101 S. W. 517; Texas Midland Ry. Co. v. Booth, 35 Tex. Civ. App. 322, 80 S. W. 121; and Stooksbury et al. v. Swan et al., 85 Tex. 563–567, 22 S. W. 963—said paragraph is subject to the objection in that it assumed that Ray Hearne turned the air on without notice or warning to the plaintiff that he was going to do so. This was a controverted issue, both by the pleadings and the evidence.

[2] It is true the evidence in behalf of appellant supporting his theory of the issue is rather meager, yet, being sufficient to require the submission of such issue to the determination of the jury, it was error for the trial court to assume that such notice or warning

was·not given before turning the air on. This, being one of the vital issues, should have been submitted by appropriate instructions to the jury notwithstanding the apparent weak, probative effect of the evidence supporting appellant's contentions in reference thereto.

[3] Third assignment is also addressed to that portion of said paragraph 8 above quoted on the ground that it assumes that it was Ray Hearne's duty to give notice or warning to appellee that he was going to turn the air on, when the same is an issuable fact, in that the evidence in the case did not disclose as a matter of law that it was the duty of said Hearne to give such notice or warning; there being at least a conflict in the evidence on said point and, therefore, on the weight of the evidence.

In the light of the following evidence, we must hold that the evidence in the case does not disclose as a matter of law that it was the duty of said Ray Hearne to give such notice or warning, to wit:

"Under the usual custom and in the course of our dealings some one would tell him (Hearne) we were ready, some one would tell him, 'All right.' That would mean for every one to get out of the way and for him to raise the wings. The men that have these braces give that notice. In answer·to your question whether or not it was the further duty of Ray Hearne to see that he (appellee) was not there before he turned on· the air, I will answer that it was their duty to get out of the way."

Said Ray Hearne testified on direct examination as follows:·

"At the proper time to turn on the air I am given a signal by some one, the man below on the ground. * * * I am sure they gave me a signal that it was ready to be turned on, or I would not have raised it. I would not have turned it on if there had not been some warning to me telling me to turn it on."

On cross-examination he further testified:

"I cannot remember who gave me notice, but am sure some one did, because I never would have touched those valves."

By reason of the following authorities, said assignment must be sustained, there being at least a conflict in the evidence on said issue. Therefore, said instruction in assuming that it was the duty of Ray Hearne to give such notice or warning was a charge on the weight of the evidence. C., R. I. & G. Ry. Co. v. De Bord, 62 Tex. Civ. App. 302, 132 S. W. 845; Harwell v. Southern Furniture Co. (Tex. Civ. App.) 75 S. W. 52; S. A. & A. P. Ry. Co. v. Waller (Tex. Civ. App.) 62 S. W. 554; G., H. & S. A. Ry. Co. v. J. K. Davidson, 61 Tex. 204.

[4] Second assignment complains of the following portion of paragraph 9 of the court's instructions:

"And that such injuries were occasioned solely by the act of one Ray Hearne, who was then operating the air drum upon a dirt spreader of defendant, in turning on the air in order to raise the wing of said dirt spreader before seeing and ascertaining that the plaintiff was in a position of safety"

—in that same assumes as a fact that Ray Hearne did turn the air on before ascertaining whether appellee was in a position of safety, and thereby constituted a charge on the weight of the evidence; said issue being a disputed fact. This assignment presents in effect the same issue raised by first assignment of error. This was a disputed fact, as must be apparent from the evidence above·quoted and the additional testimony of the witness Collett, to wit:

"At the time Mr. Bannon was hurt, he was right close to the wing on the outside and on the ground. * * * As to what he was doing, he was just standing there; do not know what he was doing with his right hand; I did not see him doing anything"—which required the submission of same by appropriate instructions to the jury.

Said paragraph 9 failed in this respect to comply with the standard exacted by the following authorities; therefore, we must sustain said assignment. (See authorities cited under discussion of first assignment of error.)

[5] Fourth assignment is addressed to paragraph 11 of the court's instructions for the reason that it is therein assumed that it was the duty of Ray Hearne and of appellant to see that appellee was out of a position of danger before Hearne applied the air. Being a controverted fact, it was error to make such assumption; same being on the weight of the evidence. The language of said paragraph supposed to contain the objectionable feature, to wit, "or that the plaintiff knew, or might by the exercise of ordinary care have known, that the said Ray Hearne would turn on the air and start the machinery, without first seeing and knowing that plaintiff was out of a position of danger, and so knowing or being in such position as he could and should under the circumstances by the exercise of ordinary care, have known that he would do so," did not assume that it was the duty of Ray Hearne to see that appellee was in a place of safety before turning on the air, but clearly submitted to the jury the issue of assumed risk based upon the proposition that although the jury should believe that appellee sustained the injuries alleged and that same were due to the failure of one Ray Hearne before applying the air in order to raise the wing of the dirt spreader to see that appellee was out of a position of danger, and should further believe that such failure constituted negligence, yet, if the jury should further find from the evidence

that the act of the said Ray Hearne in turning on the air and starting the machinery without first seeing and knowing that appellee was out of a position of danger was an occurrence or risk ordinarily incident to the service in which the appellee was then engaged, he would in law be deemed to have assumed the risk, and, in such event, the jury should have found for appellant. This assignment is overruled.

Fifth assignment is based on the refusal to give in charge to the jury appellant's special requested instruction No. 2, to the effect that unless the jury found and believed from the evidence that an ordinarily prudent person, situated as was Ray Hearne at the time and place in question, could have reasonably foreseen and anticipated that injury was likely to ensue from the negligence alleged in appellee's petition, and that their verdict should be for the appellant even though they believed and found from the evidence that appellant was guilty of negligence and that appellee sustained the injuries as alleged.

[6] The trial court properly defined the legal significance of the terms "negligence," and "proximate cause," as used in his instructions, and, as the evidence disclosed that Ray Hearne was in charge of the operation of a known dangerous piece of machinery and knew that appellee and other employees in the discharge of their respective duties in assisting in the operation of same would necessarily be brought in close proximity with said machinery while in operation, therefore the danger necessarily attending the operation of said machinery would be apparent to an ordinarily prudent person operating said machine under the same or similar circumstances as same was being operated by said Hearne when appellee received his injuries. Therefore, in view of the above instructions covering negligence and proximate cause, it was not error for the court to refuse appellant's charge requesting the submission of the doctrine commonly referred to as "foreseeableness." There was reason to expect it. Ray Hearne, charged with the wrongful act, had knowledge that such a state of things existed in the operation of said machine as would render the damage probable. Not that the particular injury would happen to appellee, but that in the operation of said machine the failure to give warning before applying the air by which the attachments referred to as "wings" would be put in motion would likely result in inflicting injury upon an employee similarly situated assisting in the operation of said machine.

The evidence clearly established an unbroken connection between the alleged acts of negligence constituting the wrongful act and the injury, and that the active cause which produced the injury was not independent of the negligence of the defendant or disconnected from it. In other words, that

238 S.W.—45

there was no intervening cause. Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162.

Sixth assignment challenges paragraph 2 of the court's instructions defining "proximate cause," on the ground that he should have further instructed the jury that the injury sustained by appellee, in order to be the proximate result of the negligence charged, must, in view of all the facts and circumstances at the time, have been reasonably foreseen as likely to ensue from the alleged negligence, if any. Our discussion and disposition of the fifth assignment applies with equal force to this assignment. We therefore overrule same.

[7] Seventh assignment is based on the refusal of the court to give appellant's requested instruction No. 15 presenting the defense of contributory negligence. Paragraph 12 of the court's general instructions to the jury presents affirmatively this theory of the case in a manner acceptable to the requirements of the law although not couched in the language of said requested instruction, and especially it was not error to refuse same as paragraphs 8 and 9 required the jury to find and believe from a preponderance of the testimony, not only that appellee sustained injuries as alleged, but that such injuries were occasioned solely by the act of one Ray Hearne in turning on the air in order to raise the wing of said dirt spreader before seeing and ascertaining that appellee was in a position of safety, and that such act on the part of said Ray Hearne constituted negligence, and that such negligence was the direct and proximate cause of appellee's injuries, before they could find in favor of appellee.

[8] Furthermore, it may be observed that said requested charge did not properly present the law applicable to contributory negligence, in that same directed the jury to return a verdict for appellant in the event they should believe from the evidence appellee was guilty of the acts of negligence therein referred to, when, under the law governing contributory negligence, same could only be used to reduce the amount of the damages appellee would be entitled to recover but for such contributory negligence. Said instructions could only be given on the theory that the injuries sustained by appellee were the result of his deliberate act, amounting to self-inflicted injuries, for the purpose of fraudulently extracting from appellant a sum of money as damages. Appellant's rights are not only safeguarded in this respect by paragraphs 8 and 9 of the general instructions, but, in addition thereto, by paragraph 14, wherein the jury were instructed:

"Unless you find and believe from a preponderance of the evidence in this case that the defendant was guilty of negligence in one or both of the ways alleged in plaintiff's petition,

and that such negligence was the direct and proximate cause of plaintiff's injuries, if any, you cannot find for the plaintiff in any sum, and your verdict in such event should be for the defendant."

We therefore overrule said assignment.

Eighth assignment is based on the court's refusal to give appellant's requested instruction No. 13, to the effect that in the event they found and believed from the evidence that appellee at the time and place in question knew that the arm or brace was liable to fall when the air was turned on, and if they further believed and found from the evidence that the appellee knew the danger, if any, of said brace or arm falling when the air was turned on, and if they further believed and found from the evidence that the appellee with such knowledge continued to keep his hand, if he did, at the place it was at the time and just prior to the time he was injured, then, in that event, they would return a verdict for appellant. The reason herein stated for overruling the seventh assignment applies with equal force to this assignment, and the same is therefore overruled.

We have carefully considered the ninth, eleventh, and twelfth assignments and, while we do not believe that any of them present material error, yet, in view of the several decisions intimating that similar charges should have been given, we suggest that in the interest of reaching a conclusion of the litigation it might be well to give same on another trial of the cause. However, we overrule said assignments as not presenting material error in the refusal of the court to submit same to the jury.

[9] Tenth assignment is based on failure of the court to conclude paragraph 9 of his main instructions so as to direct the jury to other portions of the court's instructions presenting appellant's defense, in that no reference was made in said paragraph 9 to the issues of assumed risk or contributory negligence, leaving the jury to infer that, regardless of whether or not the evidence established assumed risk or contributory negligence, under said paragraph 9 appellee would be entitled to a verdict. While we believe and would hold as an original proposition that this assignment is hypercritical and without merit, yet, in deference to authorities upholding same, we sustain it and suggest that said paragraph 9 should have been concluded with the expression, "unless you shall find for the defendant under some other instructions hereinafter given you," or some similar phrase.

[10] In this connection we think it opportune and not at all out of place to make the following observation in reference to the growing tendency to seriously impair the right of trial by jury by highly technical, logically refined decisions holding instructions by trial judges to be on the weight of evidence, when only a mind highly skilled in legal technicalities and refined logical deduction could discover in such instructions the assumption of the existence or nonexistence of any particular state of facts or that it assumed any particular issue was established or disproved.

It occurs to us that in view of the qualifications of jurors required by law, courts can reasonably assume that citizens selected and impaneled in conformity therewith at least possess such qualifications and, therefore, average intelligence and ordinary judgment capable of comprehending the meaning and effect to be given plain English, and should not assume that citizens thus selected do not possess intelligence and judgment supposed to be common to a vast majority of our citizenship at least sufficient to permit trial courts to direct the mind of jurors to the issues presented for their determination without the danger of running counter to the rule of law requiring instructions to be so framed as to submit all contested questions of fact only to the decision of the jury. Certainly a reasonable rule would be, unless the language employed is within its own terms clearly a charge or comment on the weight of the evidence, the objection on this ground should not be aided by speculation, for where there is no reasonable probability that the minds of persons of ordinary intelligence would differ as to the meaning and effect of language used not being on the weight of the evidence, there is no reason why, if speculation is to be indulged in, same should not be in favor of the ordinary intelligence of the jury in understanding and properly applying the instructions given for their guidance.

If we were at liberty to apply the above rule of reason, we would overrule all of the assignments heretofore discussed. This we have refrained from doing because of the authorities holding contrary thereto, appreciating that it perhaps would be futile for us in this instance to run counter to same.

[11, 12] Thirteenth and fourteenth assignments present practically the same question, which is the most serious developed by this appeal. Appellee on cross-examination testified as follows:

"Yes, sir; in March, 1919, I quit working for the company. I will say I quit work because I was requested to do so. Yes, sir; it is a fact that I was carrying 'dead men' on my pay roll and I got some of the money. It is not true that I was not discharged until I was indicted. I was indicted, but it was after I was discharged."

The court by paragraph 15 of his instructions to the jury placed the following limitation on the above testimony:

"You will consider this testimony only in passing upon the question of the plaintiff's ability to labor and earn money."

Appellant duly excepted to the limitation placed by said instruction on the effect to be given said testimony on the ground that said evidence was admissible for all purposes, including the credibility of appellee as a witness, and for the purpose of showing his bias and prejudice against appellant. This evidence was not admissible for the purpose to which the consideration of same by the jury was limited, but was clearly admissible on a vital right accorded appellant under the law, to wit, to show the bias of appellee whose testimony was before the jury as the sole and exclusive judges of the credibility of the witnesses and the weight to be given their testimony, and, notwithstanding the natural bias and prejudice litigants are supposed to have in all legal controversies, appellant had the right to introduce and to have the jury consider the above testimony in determining the weight to be given appellee's testimony and his credibility, especially as bearing upon his motives, inclination, prejudice, and bias as a witness. H. E. & W. T. Ry. Co. v. Wilson, 37 Tex. Civ. App. 405, 84 S. W. 274; M. K. & T. Ry. Co. v. Burk (Tex. Civ. App.) 146 S. W. 600; M. K. & T. Ry. Co. v. St. Clair (Tex. Civ. App.) 51 S. W. 666; T. & P. Ry. Co. v. Brown, 78 Tex. 397, 14 S. W. 1034; H. E. & W. T. Ry. Co. v. McCarty, 40 Tex. Civ. App. 364, 89 S. W. 805; Cox v. M. K. & T. Ry. Co., 20 Tex. Civ. App. 250, 48 S. W. 745.

Said assignments are therefore sustained.

In view of the errors above pointed out, the judgment of the trial court is reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

⬡⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 19, 1922.