## McCALLUM et ux. v. HOUSTON ELECTRIC CO.    (No. 8686.)

(Court of Civil Appeals of Texas. Galveston. Dec. 23, 1925. Rehearing Denied Feb. 4, 1926.)

1. Street railroads ⚖⇒117(7)—Evidence held to justify court's refusal to submit issue whether street car colliding with automobile was operated at dangerous speed.

Evidence *held* to justify court's refusal to submit issue as to whether street car was being operated at dangerous speed at time and place of collision with automobile.

2. Street railroads ⚖⇒117(10).

Evidence *held* to justify court's refusal to submit issue as to whether motorman kept proper lookout at time of collision with automobile.

3. Street railroads ⚖⇒117(7).

Evidence *held* to justify court's refusal to submit issue as to whether motorman had street car under reasonable control at time of collision with automobile.

---

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Trial** ⬉**352(1)—Submitting issue on discovered peril held not objectionable as on weight of evidence or placing undue emphasis on statement that motorman must have realized peril of occupants of automobile.**

In an action for personal injuries sustained in collision between street car and automobile, issue submitted on discovered peril *held* not objectionable as upon weight of the evidence, or as placing undue and double emphasis on statement that motorman must have realized peril of occupants of the automobile.

**5. Street railroads** ⬉**117(35)—Whether it appeared to motorman after discovering peril of occupants of automobile that they would probably extricate themselves held question for jury.**

In an action for personal injuries sustained in collision between street car and automobile, question of whether it appeared to the motorman, after discovering the dangerous situation of occupants of the automobile, that they would probably extricate themselves therefrom *held* a question for the determination of the jury.

**6. Street railroads** ⬉**103(1)—Street car operator must use all possible means to avoid injury after discovery of peril.**

It is the duty of operators of a street car, after discovering peril of person on track, to use all possible means to avoid injury, where they have no good reason to believe such person will extricate himself from his perilous position.

**7. Street railroads** ⬉**103(1).**

Street car operator having good reason to believe person is about to leave track is not "guilty of discovered peril."

**8. Trial** ⬉**352(1)—Special issue as to whether operators of street car discovered dangerous position of plaintiff in time to have avoided collision held properly refused as ignoring element of belief of ability to extricate.**

Special issue as to whether operators of street car discovered dangerous position of automobile occupant, and realized her peril in time to have avoided collision by use of all means at their command, consistent with safety of the street car, *held* properly refused as ignoring rule that such operators are not guilty of discovered peril, where they have reason to believe person in such dangerous position will extricate himself therefrom.

**9. Trial** ⬉**191(1), 194(1)—Courts will hold instruction erroneous as assuming facts or as comment thereon only when language is clearly a charge or comment on weight of the evidence.**

Court should not hold an instruction erroneous as assuming facts, or as a comment on the facts, on highly technical and refined deductions therefrom, but only when the language employed is clearly a charge or comment on the weight of the evidence.

**10. Appeal and error** ⬉**1068(1)—Instruction submitting issue of contributory negligence held unnecessary, where only defendant's plea of discovered peril was submitted, but harmless, in view of findings for plaintiffs thereon.**

In an action for personal injuries sustained in collision between street car and automobile, where none of alleged acts of negligence upon which plaintiffs based recovery, save plea of discovered peril were submitted to jury, *held* an instruction submitting issue of contributory negligence was unnecessary, but harmless, in view of jury's findings for plaintiffs thereon.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by L. McCallum and wife against the Houston Electric Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Cline & Waugh and Wm. H. Wilson, all of Houston, for appellants.

Baker, Botts, Parker & Garwood, of Houston, for appellee.

LANE, J. The highway leading from the city of Houston to the city of Harrisburg runs practically from west to east, and is known as Harrisburg boulevard. The street car track of the Houston Electric Company is situated along the extreme south side of the boulevard; 33 feet of the same, all that portion lying north of the street car track, is paved for the purpose of travel by those traveling in private conveyances, such as automobiles, buggies, wagons, etc. That portion occupied by the car track, after it leaves the corporate limits of the city of Houston, is not paved, and is seldom, if ever, used by persons in private vehicles. That part near the Forest Hill Cemetery could not be crossed by an automobile without great difficulty, if at all. The part covered by the car track, where the accident hereinafter mentioned occurred, was not within the corporate limits of Houston, and was, as has already been said, unpaved, and on its south side there was a ditch and an embankment of two or more feet in height. Near the point of the accident the entrance to Forest Hill Cemetery intersected the boulevard. Immediately west of the entrance to Forest Hill Cemetery there was constructed stone steps, two in number, for the use of pedestrians in reaching Forest Hill Cemetery. On the 30th day of May, 1923, Mrs. McCallum was riding in an automobile, traveling from the east and going west toward the city of Houston, on the north side of the boulevard. At a point just west of the stone steps constructed immediately west of the entrance of Forest Hill Cemetery, and about 10 or 15 feet west of said entrance to Forest Hill Cemetery, a collision occurred between the automobile in which Mrs. McCallum was riding and a street car of the Houston Electric Company, which was, at the time of the collision, going east toward Harrisburg. The collision resulted in personal injury to Mrs. McCallum.

Mrs. McCallum and her husband brought this suit against the Houston Electric Company to recover damages suffered by Mrs. McCallum by reason of said collision.

The grounds upon which the plaintiff sought recovery are: First, that the motorman in charge of the street car was guilty of negligence in not having his car under reasonable control as he approached the street crossing; second, in operating the street car at a dangerous rate of speed; third, in failing to keep a proper lookout as he approached the crossing; fourth, in negligently failing to use all the means at his command to prevent the accident and injury, after he had discovered the dangerous position of Mrs. McCallum; and, fifth, in backing the street car away from the automobile after the collision. All of the alleged negligent acts were alleged to be the proximate cause of the injuries complained of.

Defendant Houston Electric Company answered by general denial, and affirmatively pleaded that Mrs. McCallum and the driver of the automobile in which she was riding were engaged in a joint mission, and that the collision was proximately caused by the negligence of the driver of the automobile, and that such negligence was imputable to Mrs. McCallum, the injured party; and, further, that Mrs. McCallum was guilty of contributory negligence, which was the direct and proximate cause of the collision and her injuries.

The cause was tried by a jury, to whom the court submitted, after defining negligence, contributory negligence, and proximate cause, the following special issues: First. Was the driver of the automobile guilty of negligence? Second. Was Mrs. McCallum guilty of negligence in not protesting to the driver's going upon the street car track at the time and in the manner and under the circumstances? Third. Did Mrs. McCallum discover the street car and realize the peril of a collision in time so that by the exercise of ordinary care she could have avoided her injuries? Fourth. Did the motorman back the street car while plaintiff was still in the automobile, after the collision occurred? Fifth. Did the motorman discover the dangerous position of the occupants of the automobile and realize their peril, and realize that they would not probably be able to extricate themselves therefrom in time, so that, in the exercise of ordinary care, by the use of all the means at his command consistent with the safety of the street car and its passengers, he could have avoided the collision? All of the above issues were answered in the negative.

In answer to other questions submitted, the jury found that Mrs. McCallum sustained the alleged injuries to the damage to plaintiffs in the sum of $1,750. Upon the answers of the jury to the special issues submitted and the evidence the court rendered judgment for the defendant. McCallum and wife have appealed.

Appellants do not contend that the answers of the jury to the questions submitted were not supported by the evidence, nor that the judgment was unsupported by such answers, but they do contend that the court erred in not submitting, upon their request, the questions: (1) As to whether the street car was being operated at an excessive and dangerous rate of speed at the time of the collision; (2) as to whether the motorman had his car under proper control at the time of the collision; (3) as to whether the motorman was keeping a proper lookout at the time of the collision; and (4) in submitting the issue relative to discovered peril in the form as submitted, and in not submitting their requested substitute therefor. We shall dispose of the contentions so made in the order named.

[1] If there was any probative evidence tending to show that the street car was being operated at an excessive and dangerous rate of speed under the conditions existing at the time the accident occurred, the court should have submitted such issue to the jury as requested by appellants, but, if there was no such evidence, the court properly refused to submit such issue. Was there any such evidence?

While it is alleged by appellants in their petition that the point of intersection of the Harrisburg and Forest Hill boulevards, just east of the point of the accident, is a dangerous and frequently used crossing, in that a large number of automobiles and other vehicles and pedestrians cross the car track of the electric company at that point, there is no evidence to the effect that the travel at the crossing was such as to require the street car operators to apprehend special or unusual danger in operating their cars over same, by reason of the frequent use of it by automobiles and other vehicles and pedestrians. There is no evidence showing that such crossing is a specially dangerous crossing by reason of the large numbers of such vehicles and pedestrians. It is shown that the point of the accident was without the corporate limits of the city of Houston, and there is no evidence showing, or tending to show, that the speed of the street cars is limited by any law at such point, nor that such cars were being operated at a dangerous rate of speed under the surrounding circumstances at the time and place of the accident. But, to the contrary, all the witnesses who testified relative to such speed, a number of the witnesses called by the plaintiffs, testified that the street car in the collision was moving very slowly immediately before and at the time of the accident, and no one testified that it was moving at a greater speed than 8 or 10 miles per hour. Only one witness placed the speed as high as 10 miles per hour. All other witnesses who undertook to give the speed gave as their opinion that it was 4 or 5 miles per hour. Under the evidence, we think the court correctly refused to submit the inquiry as to whether the street car was being operated at a dangerous rate of speed at the time and place of the accident.

[2] We are also of opinion that there was no evidence tending to show that the motorman in charge of the street car in the collision failed to keep a proper lookout. All the evidence relative to this issue was to the effect that he was keeping a proper lookout, and that he saw the automobile in the collision from the time it began to turn toward the street car track until it went upon said track, and until the collision occurred, and therefore the court did not err in refusing to submit to the jury the inquiry as to whether said motorman kept a proper lookout.

[3] The court did not err in refusing to submit to the jury, at the request of appellants, an inquiry as to whether the motorman had his street car under reasonable control at the time and place of the accident, in that there was no evidence tending to show that he did not have such control, but, to the contrary, it was shown by all the evidence that his car was being operated at a slow rate of speed at such time and place, and that the brakes of said car were in good condition—in such condition as that he could, and did, stop the car in 4 or 5 feet after said brakes were applied.

[4] Special issue submitted relative to discovered peril is as follows:

"Did the defendant's motorman discover the dangerous position of the occupants of the automobile and realize their peril, and realize that they would not probably be able to extricate themselves therefrom in time so that, in the exercise of ordinary care, by the use of all the means at his command, consistent with the safety of the street car and its passengers, he could have avoided said collision?"

Appellants excepted to the form in which the issue of discovered peril was submitted, in that the charge as given instructed the jury to find not only whether the motorman, in charge of the street car in collision, discovered that the automobile was on the street car track, and that its occupants were in a dangerous position, and that he realized their peril, but it further instructed the jury to find whether or not the motorman, after such discovery, realized that said occupants would not probably be able to extricate themselves from such dangerous position. It is insisted by appellant that the latter part of the charge should not have been given, in that it placed undue and double emphasis on the statement that the motorman must have realized the peril of said occupants, and was therefore prejudicial to appellants, and was upon the weight of the evidence.

[5] We cannot agree with this contention of appellants. We think the charge of the court fairly submitted the issue of discovered peril. Whether it appeared to the motorman, after discovering the dangerous situation of the occupants of the automobile, that they would probably extricate themselves from such dangerous position was a question for the determination of the jury, and was properly submitted.

[6, 7] While it has uniformly been held that one upon a railway track, in front of an approaching train, is in a perilous position, and that when his perilous position is discovered and his danger realized by the operatives of the train, and they have no good reason to believe such person will leave the track and thereby extricate himself from his perilous position, it is the duty of such operatives, after such discovery, to use all means at their command to avoid injury to such person. It is also held that, where in such case the operatives have good reason to believe that such person is about to or will leave the railway track, they are not then guilty of discovered peril. H. & T. C. Ry. Co. v. O'Donnell, 92 S. W. 409, 99 Tex. 636; G., C. & S. F. Ry. Co. v. Phillips (Tex. Civ. App.) 183 S. W. 806; I. & G. N. Ry. Co. v. Logan (Tex. Civ. App.) 184 S. W. 301; Ry. Co. v. Wentzel (Tex. Civ. App.) 214 S. W. 710; Ry. Co. v. Higginbotham (Tex. Civ. App.) 173 S. W. 482; Tex. & P. Ry. Co. v. Roberts, 37 S. W. 870, 14 Tex. Civ. App. 532.

In Railway Co. v. Higginbotham it is said:

"All that is required to place upon the operatives of the train the duty to use the means at their command to prevent injury to one seen to be in a perilous position is their realization that the person in such position will not probably extricate himself therefrom. Railway Co. v. Munn, 102 S. W. 442, 46 Tex. Civ. App. 276; Galveston Electric Co. v. Antonini [Tex. Civ. App.] 152 S. W. 841; Gehring v. Electric Co. [Tex. Civ. App.] 134 S. W. 291; Higginbotham v. Railway Co. [Tex. Civ. App.] 155 S. W. 1025."

Railway v. Logan, supra:

"We gather from the authorities that for the rule of discovered peril to be applicable in the instant case it must appear that appellee was in a place of danger when seen, by appellant's engineer, and that the engineer realized his danger, and also that appellee could not or would not probably extricate himself from the dangerous situation. H. & T. C. Ry. Co. v. O'Donnell [92 S. W. 409] 99 Tex. 636."

In G., C. & S. F. Ry. Co. v. Phillips, supra, it was held that the duty of a locomotive engineer to use all means within his power consistent with the safety of his train to stop to avoid striking one who was discovered sitting on the track did not arise until, after seeing such person, it was reasonably apparent to the engineer that such person probably could not, or would not, remove himself from the track in time to avoid being struck.

[8] In view of what has been said, we do not think the court erred in refusing to submit to the jury appellant's requested charge No. 9, which is as follows:

"Did the defendant, its servants, and employees discover the dangerous position of plaintiff Mrs. McCallum, and realize her peril in time, by the use of all means at their command con-

sistent with safety on the street car and its occupants, to have avoided said collision?"

We are not prepared to hold that the issue submitted to the jury relative to discovered peril is in any sense a charge upon the weight of the evidence, as contended by appellants.

[9] The court should assume that jurors are men of average intelligence, and that they will use such intelligence in construing the instructions, and should not hold an instruction erroneous as assuming facts or as a comment on the facts on highly technical and refined deductions therefrom, but only when the language employed is, within the terms, clearly a charge or comment on the weight of the evidence. Payne v. Bannon (Tex. Civ. App.) 238 S. W. 701.

[10] By appellants' sixth proposition it is insisted that, as the court submitted to the jury only the issue of discovered peril as a ground of recovery by appellants, it was prejudicial error to submit the issues of contributory negligence on the part of Mrs. McCallum, in that such submission tended to produce on the minds of the jury that the plaintiffs were on trial and not the defendant, and were calculated to confuse the jury and bring about an incorrect verdict on the issue of discovered peril.

It would seem that, since none of the alleged acts of negligence upon which the plaintiffs sought recovery, save the plea of discovered peril, were submitted, instructions submitting an issue of contributory negligence were unnecessary; but, as the jury found that issue in favor of appellants, the submission was harmless. Such submission, we think, could not remotely tend to influence the jury's answer to issue of discovered peril.

For the reasons above expressed, the judgment is affirmed.

Affirmed.

## On Motion for Rehearing.

In our original opinion we made the following statement:

"All that portion lying north of the street car track is paved for the purposes of travel for those traveling in private conveyances, such as automobiles, wagons, etc.; that portion occupied by the car tracks after it leaves the corporate limits of the city of Houston is not paved, and is seldom, if ever, used by persons in private vehicles; that part near the Forest Hill Cemetery could not be crossed by an automobile without great difficulty, if at all."

Appellants have filed their motion for rehearing, and therein insist that the statement so made is not supported by the evidence, and ask that we correct the same and make it correspond to the evidence. We think the statement, in so far as it relates to matters material to any issue presented by the appeal, is substantially correct.

In testifying as to the condition of the Harrisburg boulevard at the point of the collision in which Mrs. McCallum was injured, the witness C. H. Scannell said:

"The roadway for automobiles is altogether on the north side of the street car track."

Mrs. G. C. Armstrong testified that there was no roadway on the south side of the street car track; that there was no driveway on that side for an automobile.

The same witness, in testifying as to her remembrance of the collision, said:

"It was in my mind, and so it occurred to me very forcibly when I saw the automobile because there was no driveway there then, and it still remains in my mind that way because there was no drive for an auto at that place."

Mrs. Maynard, one of the occupants of the automobile in which the injured party was riding at the time of her injury, a witness for the plaintiff, testifying with reference to the collision, said:

"I didn't think they would deliberately run over us. They saw we couldn't get any further."

Again she said:

"There was nothing to prevent us from going over there, from going further forward in clearing the track except a little curbing kind of, too. The steps were on this side of us."

Again:

"We didn't have any place to get out. If it had been open there we probably could have had time, if we had had open space, had had a place to get out without getting smashed up."

The same witness testified that, had the auto continued its course when it turned to the south, towards the street car track, it would have run into the ditch and a barbed wire fence.

Mrs. Storey testified that when she first discovered the street car, after they had missed their turn to go into the park, the driver of the automobile saw she could not make the turn, so she had to turn westward to avoid hitting the concrete steps; the high embankment.

Testifying further, she said:

"I will explain to the jury how the concrete steps are that I have just mentioned in my testimony at the Forest Hill gate: You have to go up two steps from the street to the sidewalk to go into the entrance, the pedestrian gate, and at that time * * * there was quite an embankment there. * * * These steps led from the Harrisburg boulevard * * * up to the sidewalk going into Forest Hill gate. There was a curb along the side of those steps; it was of concrete."

She further testified that Mrs. Warner, the driver of the automobile, could not get any further across the street car track; that she could not clear the track on account of that embankment; that she could not climb that embankment and get over the barbed wire fence also.

Testifying further, this witness said that

the fact that there was not enough room for the auto to get through prevented the driver from going on in the direction she was going towards the sidewalk and clearing the car track; that there seemed to be a little ditch in there at the time, and then there was a sidewalk, and she would have had to have gone clear up on the sidewalk, and that she (witness) did not know whether she could have done that or not.

The inspection of the photographs of the surroundings at the point of the collision marked B and C, which are incorporated in the statement of facts, without doubt show that there was a ditch between the street car track and the curb on the south side of the street; that the sidewalk on that side of the street was upon an embankment, to reach which two steps were constructed. It is apparent from an inspection of photographs marked A and B that the street beginning at the car track and extending to its north line was paved, and that the bed of the car track was bedded with shell only, and it is shown by Exhibit C that the rails of the car track protrude above the shell.

We think the matters shown by the statement of facts substantially support the statement made by us and complained of by counsel for appellant.

Having made the foregoing explanation, we overrule the motion.

Overruled.